KNAPP *vs.* WHITE.

| 23 | 529 |
| 77 | 389 |

A bill in equity, praying for relief against a mistake in a deed, in not excepting from the covenant against incumbrances, a right to dig, and maintain, a ditch for the conveyance of water through the premises, was referred to a committhe, to whose report the defendants excepted, because, on the hearing, they received as evidence of the allegations contained in the bill, 1. Letters, written by the parties during the negotiation for the purchase of the premises, containing no allusion to the ditch. 2. Proof of the long existence and necessity, of the incumbrance in question, and the defendant's knowledge thereof. 3. The fact, that certain other incumbrances, on the premises, were mentioned to the plaintiff, and excepted from said deed. Held, that such evidence was properly admitted.

Where, on said hearing, such evidence was received, and it did not appear that other evidence was not offered by the plaintiff, and the committee found that it was the intention of the parties to except such ditch from the cove‐ nant against incumbrances, and that it was not excepted through the mistake of both parties; it was held, that such finding of the committee was conclusive, and could not be reviewed by the court.

An omission of a committee in chancery, to find all the facts in issue between the parties, may be supplied by a finding of the court; but *it is* not competent for the court to pass upon evidence, which has once done its office, before a committee, in enabling them to find facts upon it.

Courts of equity will often found their decrees upon evidence of the acts of the parties, when nothing was said by them, on the ground that men are presumed to intend the probable consequences of what they do.

THIS was a bill in chancery, to correct a mistake in a deed of land, given by the plaintiff to the defendant. At the term of the superior court, holden in April, 1853, the cause was referred to a committee, whose report embraced substantially the following facts:

On the second day of October, 1851, the plaintiff owned and possessed, in his own right, in fee, a certain tract of land, situated in the town of Danbury, containing about two and a half acres, with the buildings standing thereon, excepting a blacksmith's shop and engine-house. There was, and ever since the year 1792 had been, a raceway, or ditch, running through said land, for the purpose of conveying the water from a mill situated a little westerly

from said land, about one-half of which ditch, or raceway, was covered over, and concealed from view, and the remaining part was uncovered, and plainly visible. The right to keep, use, and maintain said ditch in said place, for said purpose, had been theretofore granted, and leased, by Benjamin Knapp, deceased, who was then the owner of said tract of land, to one Daniel Comstock, who then owned said mill, for the term of 999 years, from the 17th day of December, 1792; which said lease was dated on said 17th day of December, 1792, and contained divers covenants, stipulations and conditions. Said land from said 17th day of December, 1792, to said 2d day of October, 1851, was subject to the right of said Comstock, his heirs and assigns, to have, keep and maintain said ditch, over and through said tract of land, during the term aforesaid. On and before said 2d day of October, 1851, on the application, and at the instance, of the defendant, a negotiation had been commenced, and was pending, between the plaintiff and the defendant, for the purchase of said tract of land and the buildings thereon. On the 2d day of October, 1851, and for nearly sixty years before that time, the existence of said ditch in said place, for the use and purpose aforesaid, was a fact of general and public notoriety in said Danbury, and during the greater part of said period, had been well known to the defendant. Said ditch, or raceway, was indispensable for the operating of said mill; was constructed in a durable and permanent manner, and, without the right in the owners of said mill, to have, keep, and maintain the same, over and through said land, the value of said mill, if not entirely destroyed, would be greatly diminished and impaired; all which was well known to both the plaintiff and defendant. In the negotiation between the plaintiff and the defendant, for the sale and purchase of said tract of land, no allusion whatever to said ditch was made by either of the parties; but the existence thereof, its long continuance, the durability of its structure, and its necessity in order to the operating of said mill, were well known to them

both, and the right to have, keep up and maintain the same over and across the said tract of land, was, during said negotiations, and at the time of executing the deed by the plaintiff to the defendant, deemed and treated by said parties, as a permanent right in the owner, or owners, of said mill. During the time, when such negotiation was pending, and when said deed was executed, and delivered to the defendant, it was not the intention of the plaintiff to warrant, or guaranty, the defendant against the existence of said ditch, and the right to keep and continue the same, as aforesaid; nor was said ditch or said right considered by the defendant, before, or at the time of the execution of said deed, an incumbrance on said land, the existence of which should, or would, subject the plaintiff to any liability to the defendant, upon any covenant, or covenants, which might be inserted in the deed thereof, to be executed by the plaintiff to the defendant.

On the 2d day of October, 1851, at said Danbury, as the result of said negotiations, the plaintiff sold, and by deed, duly executed and acknowledged, conveyed to the defendant, who then and there purchased, and took from the plaintiff, said land and buildings, so then belonging to the plaintiff in fee-simple, for the price of three thousand seven hundred dollars, a sum considerably exceeding the actual intrinsic value of said land and buildings, at the date of said deed, and it was then the intention of the defendant, to purchase and take, under and by virtue of said deed, and his understanding that he did take said land and buildings, subject to said ditch or raceway, and subject to the right to have, maintain, and continue the same over and through said land, in manner aforesaid. And it was the design and intention of the plaintiff, by virtue of said sale and said deed, to transfer and convey to the defendant, said property, subject to said ditch, and to the right to have, keep, and maintain the same.

In pursuance of, and in conformity with, the real design, intention, and understanding of the parties, during said ne-

gotiations for the purchase and sale of said property, and at the time of the execution and delivery of said deed, said ditch, and the right to keep up and continue the same, during the residue of said term of 999 years, ought to have been excepted from the covenant against incumbrances, contained in said deed; but through haste, and by reason of inadvertence, on the part as well of the defendant, as of the plaintiff, the existence of said ditch, and said right to keep and maintain the same, were not excepted therefrom. The defendant claimed that said ditch, and said right to keep up the same, at the time of executing said deed, were an incumbrance on said land, and that the plaintiff was bound to pay him damages on account thereof, and threatened to prosecute the plaintiff to recover the same.

Against the acceptance of this report, the defendant filed a remonstrance; alleging as grounds of remonstrance, that, on the hearing before said committee, the plaintiff to prove that he and the defendant, at the time of executing and delivering the deed aforesaid, deemed and treated the right to keep and maintain the ditch, and water-course, across said land, as a permanent right in the owners of said mill; and that, during the time when such negotiation was pending, and when said deed was executed and delivered to the defendant, it was not the intention of the plaintiff to warrant, or guaranty the defendant against the existence of said ditch, and the right to keep and maintain the same, over and across said land; and that said right was not deemed by the defendant, before or at the time of the execution of said deed, an incumbrance on said land, the existence of which should, or would, subject said plaintiff to any liability to the defendant, upon any covenant or covenants, which might be inserted in the deed thereof, to be executed by the plaintiff, offered in evidence certain letters written by said parties,—also, the facts regarding the existence, character, and necessity of said ditch, and the knowledge thereof by the defendants, stated in said report; also, the fact that certain incumbrances on

said land were mentioned by the defendant, when said deed was given, and were excepted from said deed. No part of said evidence showed any knowledge in the defendant, of any lease, or the terms thereof. To this evidence the defendant objected, before the committee, as irrelevant, and not conducing to prove the averments contained in said bill, but the committee admitted the same.

Upon the hearing of said remonstrance, the court found that the plaintiff, on the trial before the committee, offered to prove the truth of the facts alleged in the bill, by the evidence and testimony set forth in said remonstrance. And among other witnesses, the defendant testified to the notoriety, condition and structure of the raceway, or ditch, as claimed by the plaintiff, and that the same was not spoken of by the parties during the negotiations, but he supposed the owner of the land had control of the ditch, or raceway. To all which testimony and evidence, as to its relevancy and sufficiency, the defendant's counsel objected; and in considering, and deciding, and in making the report aforesaid, the committee entertained said evidence as proper and admissible, for the purpose for which it was offered, and was materially influenced and controlled by the same, in making his report. And the court found the facts alleged in said remonstrance proved, and thereupon rejected the report, and ordered the petition to be dismissed, and that the defendant recover of the plaintiff his costs.

The plaintiff thereupon, by motion in error, brought the case before this court for revision.

*Hawley*, and *Butler & Carter*, in support of the motion.

1. It is clearly shown, by the report, that each party well knew the existence of the incumbrance of the ditch; that it was permanent; the intent of the grantor to convey it, and of the grantee to receive it, subject to that incumbrance. Neither party intended that it should be covenanted against, and it is explicitly found that the deed does not, in that respect,

comport with the intent of the parties. It is no matter how the mistake occurred. The rule does not depend at all on the cause or manner of the mistake. 1 Sto. Eq. J., § 142, 152, 153, 155, 156, 159, 162. 2 Sw. Dig., 92, 95. Newland Con., 432. Coop. Eq., 140. Kirby, 400. *Matson* v. *Parkhurst*, 1 Root, 464. 10 Conn. R., 243.

2. No sufficient ground for setting aside the report was shown by the remonstrance.

It does not appear, nor is it true, that the testimony set forth was all that was offered and heard by the committee. That which was objected to, clearly tended to show the facts it was offered to prove, and would have tended to show them, had it been all the testimony. The well known rule, that an express warranty (in case of personalty) does not apply to visible defects, rests upon the evidence which the knowledge of such defects furnishes, that the parties did not intend that this warranty should apply to them. 2 Sw. Dig., 382. 15 Johns. R., 491. 20 E. C. L. R., 255. Even at law, the knowledge of the parties, of facts and circumstances is regarded as evidence of intent in construing contracts. *Leland* v. *Stone*, 10 Mass. R., 459. *Fowle* v. *Bigelow*, 10 Mass. R., 379.

3. The averment of the remonstrance, that the testimony offered showed no knowledge of the lease, &c., is not the averment of a fact, but only of the inference of the pleader from the evidence. The testimony did in fact show, or at least tend to show, knowledge of the lease, even if that had been all the testimony offered.

It showed, directly, everything which could put the party on enquiry, and lead to an examination of the lease; there was surely enough to amount to constructive notice.

4. The testimony was not objected to, as not being proper to prove knowledge of the lease, but as being inadmissible to prove other facts. The remonstrance raises no question whether such knowledge was necessary to entitle the plaintiff to recover. A knowledge of the lease was not necessary;

for the facts, found to have been within the knowledge of the parties, would of themselves show a right to the water-course in fee; a greater right, a greater incumbrance than the lease created, which right would necessarily give to the proprietor a right to keep the ditch clear, and to do every-thing for that purpose, which the lease empowered him to do, while it would leave him exempt from some liabilities which the lease imposed on him.   The incumbrance, therefore, was less than that which the facts, found to have been within the knowledge of the parties, would of themselves, without the lease, have established.   But the report, by finding that the parties had full knowledge " of all the facts aforesaid," finds that they had knowledge of the lease.

5. The objections taken by the superior court, to the re-port, are rather by way of a mere review of the evidence, before the committee, than of a revision of any legal decision. The weighing of the evidence, and the finding of facts upon it, belonged exclusively to the committee.

But the court, in arriving at its conclusion, took into con-sideration, and acted on testimony, not at all alluded to by the remonstrance; there was no complaint that it was ex-cluded by the committee, and it belonged exclusively to the committee to determine its weight.

If the report was rightfully rejected, the bill should not have been denied without a further hearing.

*White* and *Dutton*, contra.

I. The superior court should have rejected the report of the committee, and found the facts alleged in the petition not true, because, 1. The whole of the testimony, offered by the plaintiff, of the notoriety of the ditch, or raceway, and the knowledge of the defendant of its existence, and upon which the report was mainly founded, was improper, and should not have been admitted by said committee.   2. Be-cause the committee went beyond his powers in inferring facts to exist, from certain other facts proved, which inference

was neither legal nor equitable, particularly the inference that it was the intention of the plaintiff to give, and the defendant to take, the deed in question, subject to said ditch, or race-way, and to the right to continue the same, over and through said land, in the manner mentioned in said report,—the evidence being, that during all the negotiations for the sale or purchase of said property, said ditch, or raceway, was never mentioned between the parties, or adverted to by them, and consequently the parties could not have intended to have excepted it, in the covenants of warranty.

II. The finding by the superior court, of the facts contained therein, was legal and proper. Any facts were within the issue, which showed that the report ought not to be accepted. The court is not confined to the facts found by the committee, but may find new facts. *Callender* v. *Colegrove*, 17 Conn. R., 2.

III. The judgment of the superior court should have been to dismiss the bill, it appearing from the facts admitted and properly proved, that a court of chancery can grant no relief. 1 Sto. Eq., ch. 5, § 151, 152. *Hubbard* v. *Norton*, 10 Conn. R., 422. 2 Sw. Dig., 38, 95. 1 Vesey, 317.

IV. The remedy, if any, would be at law, by overruling the opinion of the court in *Hubbard* v. *Norton*, 10 Conn. R., 422.

HINMAN, J. The superior court, at its October term, 1853, found certain facts, in respect to the admission of evidence before the committee, appointed to find the facts in this case; and that the committee was materially influenced, and controlled, by the same, in considering, deciding and making his report; and thereupon set aside, and rejected, the report: and, at a subsequent day, without taking any measures to find whether the facts stated in the bill were, or were not, true, dismissed the bill, and rendered judgment for costs, in favor of the defendant. The order of the court, dismissing the bill, was irregular, because the statute expressly requires

that courts of equity shall cause the facts, on which they found their decrees, to appear on record. Stat. Ed., 1854, p. 471, §7. But this irregularity has now been obviated by the agreement of the parties, sanctioned by the court, which has set aside the order rejecting the report and dismissing the bill. And the case now comes before us, upon the report of the committee appointed to find the facts, the remonstrance of the defendant against the acceptance of it, the finding of the superior court, at its October term, 1853, and the reservation of all questions, arising upon these documents, for the advice of this court, at the request of the parties pursuant to their said agreement. There are also appended to the record, the reasons of the judge of the superior court for dismissing the bill. But this, being no part of the record, must be entirely disregarded, so far as any facts are stated therein, which are at all at variance with the facts, found in the other documents, or are not properly in issue between the parties.

The object of the bill is to reform the plaintiff's deed to the defendant, so as to except from the operation of the covenant against incumbrances, a grant of a right to dig, and maintain through the premises conveyed, a ditch, for the conveyance of water from a certain grist-mill to the river, which was made in 1792, by the then owner of the premises, and was to continue for the term of nine hundred and ninety-nine years, the grantee thereof always to keep said ditch covered with stones and earth, and levelled so that grass may grow and form a sod upon it, for the use of the grantor, and the grantee to have the right of access to said land, to make all necessary repairs in the ditch, and the privilege of a free flow of water from the mouth of the ditch, with other provisions contained therein, which it is unnecessary to enumerate.

The report finds the material allegations in the bill, to be proved and true,—particularly that, up to the time of his deed to the defendant, the plaintiff owned the premises; that, ever since 1792, there has always been the raceway, or ditch,

described in the bill, running through the same, and convey-
ing the water from a mill, situated a little westerly from the
land, one-half of the ditch being covered, and the remaining
part uncovered and plainly visible; that the grant of the right
to maintain the ditch, and its existence, and use, has been a
fact of general notoriety for more than sixty years, in Dan-
bury, and was well known to the defendant, being indispens-
able to the operating of the mill, which was also well known
to the defendant, and to the plaintiff; that no mention or
allusion was made to it in the negotiation for the sale and
purchase, but its existence as a permanent structure, its
necessity in operating the mill, and the right to keep and
maintain it, were treated by the parties as a permanent right
of the mill-owners; and it was not the intention of the par-
ties, that the plaintiff should warrant against its existence, or
the right of the mill-owners to maintain it, and it was not
deemed, or considered, by the defendant as an incumbrance
which would subject the plaintiff to liability on any cove-
nants, which might be inserted in the deed. Notwithstand-
ing which, the plaintiff, on the 2d day of October, 1851, did
sell to the defendant, and convey to him, said land, by deed
of warranty, containing the usual covenants against incum-
brances, with no exception of said right of the mill-owners
to maintain said ditch for the said term of nine hundred and
ninety-nine years, whereas it was the intention of the de-
fendant to purchase said land, and take said deed, subject to
said ditch and the right in the owners of the mill to main-
tain the same; and further, finding that the right to keep
and maintain said ditch, for the term of nine hundred and
ninety-nine years from the date of the grant, ought to have
been excepted from the covenant against incumbrances, but
through haste, and by reason of inadvertence on the part
of both parties, the right was not excepted therefrom. And
the defendant now threatens the plaintiff to prosecute him
for damages, on account of the existence of said ditch, and
the right in the mill-owners to maintain it.

These facts, if properly found by the committee, present a clear case of mutual mistake, which it is always the province of a court of equity to relieve against. 1 Sto. Eq., § 142 and 152 inclusive. The case, then, must depend upon the question, whether the committee proceeded properly in finding them, and acted upon proper evidence; or whether there is anything in the finding of the superior court, which varies the case from that presented in the finding of the committee.

The remonstrance excepts to the finding of the committee, on three grounds.

First. The committee received, in evidence, to prove those facts, certain letters, written by said parties.

Secondly. The facts regarding the existence, character, and necessity of said ditch, and the knowledge thereof by the defendant.

Thirdly. That certain incumbrances on said land were mentioned by the defendant, when said deed was given, and were excepted from said deed. And said remonstrance alleges, and claims that no part of said evidence showed any knowledge in the defendant, of any lease, or the terms thereof.

The finding of the superior court upon this remonstrance is, that the plaintiff, on the trial before the committee, offered to prove, by the evidence and testimony in said remonstrance set forth, the truth of the facts set forth in the bill, and said evidence was admitted, and heard, and considered, by the committee. And among other witnesses, the defendant testified to the notoriety, and condition, and situation of the race-way, or ditch, as claimed by the plaintiff, and that the same was not spoken of by the parties, during the negotiations, but he supposed the owner of the land had control of the ditch, or raceway; and that the committee received said evidence as proper, and was materially influenced and controlled by it in his decision. Whereupon, the court found the facts alleged in the remonstrance, proved, and thereupon disapproved and set aside the report.

In regard to the letters between the parties, the remonstrance does not state their contents, though it alludes to them, as annexed to it. They however have not been annexed, and the court, in its finding, makes no special allusion to them, and as we have only seen one or two of them, it is impossible for us to say, whether they were relevant to the issue or not: it is understood, however, that they were only offered for the purpose of showing that, in the negotiation of the parties, so far as it was shown by the letters, no allusion was made to the ditch. So far as they went, therefore, we do not see but that they were admissible for the purpose of showing, that the existence of the ditch, as an incumbrance, was overlooked by the parties, though they had full knowledge of it, as a fact. In this aspect, they were pertinent to the claim made in the petition, and though of no very great weight in themselves, we yet think the committee was correct in receiving them as evidence.

Secondly. The facts regarding the existence, character, and necessity of said ditch, and the knowledge thereof by the defendant, seem to us to have been clearly admissible. We can conceive of no ground, upon which the existence of the ditch, and the knowledge of the defendant of it, for a period of sixty years, could be objected to. Its existence, as a permanent incumbrance, is the main ground and foundation of the application for relief. If it had no existence, the defendant would have no claim under the covenants in his deed, and the plaintiff would be under no liability to be relieved against. And if the defendant had had no knowledge of it, surely there could be no claim that he ought, in equity, to give up any security, that the covenants in the deed give him against it. And the character of the ditch itself might, and no doubt did, tend very conclusively to show the knowledge of the defendant of it, as an artificial structure. It was so covered for about half its distance, as not to be visible, but when it became visible, it would seem that its inspection would show very clearly whether it was,

or was not, an artificial structure, bringing the water from the mill, or whether it was a natural spring which formed the stream that flowed from it, where it was first visible.

The fact that the blacksmith's shop, and engine-house, on the premises, were excepted from the deed, went to show that it was the intention of the parties to except from it whatever incumbrances there might be upon the land, that the plaintiff had no right to convey.

If we are correct in what has been said, it follows that the committee, in finding the facts in the case, did not act upon any illegal or improper evidence. Indeed, we are inclined to think that the error of the superior court, in setting aside the report, consisted in reviewing the finding of the committee upon the evidence itself, rather than in confining itself to the simple question of the admissibility of the evidence, to prove the facts for which it was offered. It is always the province of the court, to supply any defect in the report of a committee, in not finding all the facts which are in issue, and which may be important to a decision of the case: but we do not understand that it belongs to the court to pass upon evidence which has once done its proper office before a committee, in enabling the committee to find facts upon it, any more than to review the finding of a jury, upon evidence submitted to it for the purpose. From the existence and notoriety of the incumbrance, its long standing, and the long acquaintance of the parties with it, as a permanent thing, the fact that no mention was made of it in the negotiation, though other incumbrances were mentioned in the deed and excepted, the committee drew the inference, that it was the intention of the parties that it should be excepted from the deed. The court, on the contrary, was of opinion that nothing was done by the parties, from which such an inference could be made. Had this been a mere legal inference, as seems to have been the opinion of the court, it might properly be reviewed, but, as we think it an inference of fact, made by the committee, from other facts and circumstances

proved, the inference of the committee must conclude it. Besides, it no where appears that the evidence alluded to was the only evidence before the committee on the point, but assuming that it was, the argument in favor of the finding of the committee is very strong. An express warranty on the sale of personal chattels, does not apply to visible defects, because the fact that the defect was plainly visible is evidence that the purchaser knew it, and did not take his warranty on account of it. This principle does not apply in the case of a warranty by deed, because the terms of a deed can not be contradicted, or varied, by parol, and undoubtedly a man may, if he will be so fool-hardy, make an express warranty in a deed, where he knows that it is broken, at the moment the deed is delivered, and knows also that the fact is well known to the party to whom he gives it. But, ordinarily, we suppose that parties do not, in this open way, intentionally involve themselves in law suits. And we do not see why the plain, open, visible, and notorious character of this incumbrance, connected, as it was, with full knowledge of the parties of its existence, does not furnish evidence that it was not intended by the parties to be warranted against, upon a principle, analogous to that which applies to visible defects, in the sale of personal chattels by parol.

The defendant insists, that the long continuance of the ditch across the land, together with full knowledge thereof on his part, furnishes no evidence of the existence of the grant under which it has been maintained. Whether White had knowledge of the terms of the instrument itself, we do not think important. He knew that the structure had, for very many years, been maintained, and used, by the mill-owners, to convey the water from the mill; and that it was a permanent structure. He could only infer from this, if he did not know the precise terms of the grant, or did not know that there was a grant in fact, that the mill-owners owned the right, as appurtenant to their mill, and that it was a right in fee, even if acquired by adverse use,

for the long time it has been in existence, and he ought not now to complain that the right, by the grant itself, is less than he had a right to suppose had been acquired. But he had such knowledge as was sufficient to put him upon enquiry, which in equity is sufficient notice.

The defendant's counsel seem to suppose that there could have been no intention to except the right to maintain the ditch from the deed, because the parties said nothing about it. But courts will often found decisions and judgments upon the presumed intention of the parties, where nothing has been said. A man is presumed to intend the natural and probable consequence of what he does; and on this principle many persons have been found guilty of the highest crimes. A man is presumed to accept of a conveyance of property, made to him, on the ground that, it being for his benefit, he would naturally wish to receive it; and on this principle titles have been established. Indeed, we always draw inferences from our observation of the usual habits of men, which lead to a great variety of presumptions. These inferences are the conclusions drawn by reason, and common sense, from premises established by proof; and are as applicable to questions of intention, where the intention of parties becomes important, as to any other disputable fact. It is true, as remarked by Judge Story, that if the proofs are doubtful and unsatisfactory, and the mistake is not made entirely plain, equity will withhold relief, on the ground that the written paper ought to be treated, as a full and correct expression of the intent, until the contrary is established beyond reasonable controversy. But this does not mean that there must always exist direct, and positive, proof that the instrument does not express the true intent of the parties, in order to justify the court in reforming it. To give any such construction to the rule, would be to deny any right in a court of equity to interfere, unless the instrument could be shown to vary from written memoranda of the terms of the contract from which it is drawn up, or some evidence equally decisive.

The Consociated Presbyterian So. of Greens' Farms *v.* Staples and others,

We do not so understand the rule. And upon the whole case, we are unable to see that the committee acted upon any improper evidence, or that he drew wrong inferences or conclusions from the evidence before him. We therefore advise the superior court to accept the report of the committee, and to grant the prayer of the bill.

In this opinion the other judges concurred.

Decree for plaintiff.