## CHARLES A. JENNER *vs.* WALTER BROOKS.

Third Judicial District, Bridgeport, October Term, 1904.

TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

To what degree of certainty a plaintiff must prove his case in a suit for the reformation of a deed, *quære.*

In the present case the defendant insisted that the allegations of the complaint must be established beyond reasonable doubt. *Held* that it did not appear from the record that such claim was overruled, nor that it was not adopted and followed by the trial court in deciding the cause.

While the mistake must doubtless be clearly made out in cases of this character, it is not essential that the intention of the parties be established by positive and direct evidence; for, in a given case, their acts and conduct may well afford satisfactory and convincing proof of such intent.

A plaintiff who is entitled to a conveyance of land from the defendant is entitled, under our statute (§ 4029), to a written instrument under seal; even though the defendant does not challenge the validity of the deed, because unsealed, and notwithstanding the plaintiff may have meanwhile acquired a good title by adverse possession.

Argued October 26th—decided December 16th, 1904.

SUIT to obtain a conveyance of certain real estate or a decree vesting the title in the plaintiff, and the reformation of a deed, brought to and tried by the District Court of Waterbury, *Peasley, Deputy-Judge;* facts found and judgment rendered for the plaintiff, and appeal by the defendant. *No error.*

*Robert L. Munger,* for the appellant (defendant).

*Charles G. Root* and *Thomas Bowen,* for the appellee (plaintiff).

TORRANCE, C. J. The facts upon which the judgment in this case is based are, in substance, the following: In April, 1886, the plaintiff and defendant agreed to purchase and pay for, equally, a certain lot of land in Naugatuck be-

longing to one Conran, fronting on Galpin Street. The title was to be taken in the defendant's name, and the land so bought was to be divided into two equal lots, one fronting on Galpin Street, and the other, the rear lot, having no street front, was to have a right of way over the front lot. The plaintiff was to have the rear and the defendant the front lot. Pursuant to this agreement, the Conran land, purchased by the plaintiff and defendant, was conveyed to the defendant in April, 1886, and in May of the same year the defendant conveyed to the plaintiff the rear half of the Conran land as agreed. In May, 1886, the plaintiff and defendant went into the exclusive possession of their respective lots. The defendant's deed to the plaintiff of said rear lot contained the following clause : " The meaning of this deed is that said grantee is to have one half of the rear of the lot I bought of Patrick Conran, and also to give said grantee a roadway on and through the west side of my premises, so that he can reach his lot." In August, 1886, the plaintiff and defendant, being desirous of enlarging their lots, agreed to purchase from Conran a strip of land 20 feet wide adjoining the northerly side of their respective lots, each to pay one half of the price, and to own one half the strip. Conran refused to sell the strip unless the plaintiff and defendant would first quitclaim to him their respective lots, and this they did on the 14th of August, 1886. Conran then, on the same day (by a deed hereinafter referred to as Exhibit 2), conveyed the land so quitclaimed to him, together with the 20-foot strip, to the defendant, who had theretofore agreed to convey to the plaintiff the rear half of the land thus conveyed to him by Conran. After this, on the same day, the defendant, intending to convey to the plaintiff the rear half of said land, delivered to the plaintiff the deed now in question, hereinafter referred to as Exhibit A. By mistake this instrument was not sealed, and it did not convey to the plaintiff the half of the land conveyed to the defendant by Exhibit 2. The true rear half of said land has a north line of a trifle under 59 feet and a south line of a trifle over 59 feet, and its west line passes through the well hereinafter men-

tioned; while in said deed said north and south lines were by mistake described as being each only 54½ feet long, thus making said west line run east of the well, and giving to defendant a strip of the rear half about 4½ feet wide and 109 feet long. This well was dug in 1886 by the plaintiff and defendant, on what they then supposed was their dividing line, each paying one half of the expense thereof. Both parties to Exhibit *A* supposed and believed that it conveyed to the plaintiff the rear half of the land described in Exhibit 2; both supposed that their dividing line ran nearly through the center of said well; and from 1886 to 1903 each, without objection from the other, was in the exclusive use and occupation of their respective lots up to said dividing line. In May, 1903, the plaintiff first knew that Exhibit *A* was not sealed, and that a mistake had been made therein as to the length of the north and south lines. He was informed of these things by the defendant, who then claimed to own a strip of said rear lot next east of his own, about 4½ feet wide and 109 feet long. The plaintiff then requested the defendant to affix a seal to said deed, and to correct said mistake, but this he refused to do.

The court is unable to find from the evidence whether the mistake, as to the length of the north and south lines in Exhibit *A*, was the mistake of the scrivener or of the parties; but it finds that the contract between the plaintiff and defendant to divide the land conveyed by Exhibit 2, equally, "was never changed or modified," and that Exhibit *A* "did not convey the land intended by the grantor to be conveyed by him, and by the grantee, to be received by him." Upon these facts the court reformed the deed to correspond with what it found to be the intention of both parties, and adjudged that as so reformed it should "speak and by relation take effect as of its original delivery, and as though the defendant's seal was affixed thereto."

We think the facts found amply justify the judgment rendered; and the entire evidence, which is certified up, seems to justify the finding as the court has made it. Un-

less, then, the trial court committed some material error of law during the course of the trial, the judgment must stand.

The assignments of error are sixty in number. The first relates to the action of the court in ordering the defendant to produce a certain deed; while the rest may be divided into four groups or classes, alleging that the court erred either (1) in finding certain facts without evidence; or (2) in refusing to find certain facts; or (3) in overruling certain of the defendant's claims of law; or (4) in rendering judgment for the plaintiff.

As to the first reason of appeal. The court, on the plaintiff's written motion, ordered the defendant to produce the deed hereinbefore called Exhibit 2. The defendant in his brief says he had no opportunity " to plead, answer or demur to the motion." The record does not show this; for aught that appears he had such opportunity. Again, it does not appear that he complied with the order, nor that he objected to it, nor that he objected to the deed being offered in evidence when produced, if it was produced; and it does appear that the deed ordered to be produced was put in evidence by the defendant as one of his exhibits in the case. Under these circumstances the order complained of did the defendant no harm, even if, as he claims, it was made upon a motion which failed to comply with the statute (§ 733).

As to the errors assigned in groups one and two aforesaid, we think the evidence in the case fully warranted the court in finding the facts which it is alleged it found without evidence, and in refusing to find the facts which it refused to find.

In the trial court the defendant claimed that the plaintiff was bound to prove his case, not merely by a preponderance of evidence as in civil cases generally, but, like the State in criminal cases, was bound to prove it beyond reasonable doubt; and most of the errors assigned in groups one and two are based on the assumption that the court below overruled this claim. In all or most of these assignments, the real claim of the defendant appears to be that if the court, in weighing the evidence, had held the plaintiff to

proof beyond reasonable doubt, the finding would have been in the defendant's favor; and so the principal questions discussed in his brief are (1) whether the rule of proof is as he claimed it to be in the trial court, and (2) whether the court overruled that claim.

Whether the rule of proof in cases like the present is as the defendant claims it to be, we have no occasion to decide now, for the record does not show that the court overruled the defendant's claim, and we cannot say that the plaintiff's case was not made out beyond reasonable doubt. The defendant admits, as upon the record he must, that the court did not in terms overrule this claim of the defendant; but, he says, if we look at the evidence in the case the conclusion is inevitable that it was in effect overruled and not applied.

We do not think so. Most of the controlling evidence in the case comes from the acts and conduct of the parties. It was furnished by both sides, and was not at all in dispute or doubt, and it is much stronger than any mere words of theirs. " Courts will often found decisions and judgments upon presumed intention of the parties, where nothing has been said. A man is presumed to intend the natural and probable consequence of what he does; and on this principle many persons have been found guilty of the highest crimes. . . . Indeed, we always draw inferences from our observation of the usual habits of men, which lead to a great variety of presumptions. These inferences are the conclusions drawn by reason, and common sense, from premises established by proof; and are as applicable to questions of intention, where the intention of the parties becomes important, as to any other disputable fact. It is true . . . that if the proofs are doubtful and unsatisfactory, and the mistake is not made entirely plain, equity will withhold relief, on the ground that the written paper ought to be treated as a full and correct expression of the intent, until the contrary is established beyond reasonable controversy. But this does not mean that there must always exist direct and positive proof that the instrument does not express the true intent

of the parties, in order to justify the court in reforming it. To give any such construction to the rule, would be to deny any right in a court of equity to interfere, unless the instrument could be shown to vary from written memoranda of the terms of the contract from which it is drawn up, or some evidence equally decisive." HINMAN, J., in *Knapp* v. *White*, 23 Conn. 529, 543. We think there is nothing in the record to justify the inference that the trial court either in effect, or by implication, or in fact, overruled the claim that the plaintiff must prove his case beyond reasonable doubt.

The defendant claims that the court erred in decreeing that the deed should have a seal, because he says no such relief is prayed for. This we think is not so. The prayer is for a conveyance, and a conveyance of land, under our statute (§4029), means a writing "sealed by the grantor." The defendant further claims that the court erred in decreeing that the deed should be sealed, inasmuch as the defendant makes no claim that the deed is invalid, and plaintiff has a good title by adverse possession. The answer to this is, that under his agreement with the defendant the plaintiff was entitled to a valid deed to his rear lot, and the court did not err in giving him one, even though no one had yet questioned his title, and even though he had a good one also by adverse possession.

The defendant made divers other claims of law which he alleges the court overruled. It does not appear, either expressly or by necessary implication, that the court did overrule them, but assuming that it did so, we think it committed no error in so doing.

We think the court did not err in giving judgment for the plaintiff as it did.

There is no error.

In this opinion the other judges concurred.