GEORGE LEWITT ET AL. vs. THE PARK ECCLESIASTICAL SOCIETY.

First Judicial District, Hartford, March Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

The trial court is entitled to treat a paragraph of a requested finding as an entirety, and, if any part of it is bad, to refuse the whole.

Evidence that the plaintiffs had been physically present upon a cindered vehicular drive or passway which was an incumbrance upon land which they later contracted to purchase from the defendant, did not require the trial court to find, as claimed by the defendant, that they had observed it, since the evidence at most indicated that they merely had opportunities of observing it; moreover, actual observation of the passway would not have charged the plaintiffs with knowledge that adjoining owners had rights of way over it.

The defendant's claim that the land described in the contract of sale did not include the passway was negatived by the recitals in its pleadings, by the finding, by the certificate of title of which it approved, and by the deed which it tendered in performance of its contract, all of which recited that the passway was an incumbrance.

The qualifying statement—"however otherwise said real estate may be bounded"—appended to the description of the premises in the contract, could not be construed to permit a subsequent alteration to exclude the passway, since in the language of

LeWitt *v*. Park Eccl. Soc.

conveyancing, such a phrase is usually employed merely to indicate possible misinformation as to the names of adjoining owners, and is equivalent to such terms as "now or late" and "now or formerly."

In the absence of fraud or misrepresentation, a court of equity cannot reform an executory written agreement by introducing into it new terms derived from parol evidence, and then enforce it, either by a decree for specific performance or a judgment for damages, as a written contract sufficient under the statute of frauds; nor can a claim which substantially involves such relief succeed when interposed as an equitable defense to an action by the other party to the contract, since § 5554 of the General Statutes, though permitting the administration of legal and equitable rights in one action, is to be construed in the light of the general purpose and effect of the Practice Act which, while it has abolished certain distinctions of form and employed a new nomenclature, has not changed the substantive law, it still remaining true that the same facts entitle one to the same redress as before, and to no other.

The plaintiffs refused to perform a written agreement to purchase defendant's real estate on the ground that the deed tendered by the defendant referred to a certain passway as constituting an incumbrance, which was not mentioned in the contract. The defendant claimed the right to retain the sum of $5,000, already paid by the plaintiffs upon the purchase price, as liquidated damages; and in the present action brought by the plaintiffs to recover that amount, the defendant answered, by way of equitable defense, that the existence and nature of the passway as an incumbrance were well known to all parties at the time of the execution of the contract and that, in its failure to make reference thereto, the writing did not express their full understanding and agreement. The trial court excluded evidence offered by the defendant in support of this contention and rendered judgment for the plaintiffs. *Held* that the rulings made and judgment rendered by the trial court were proper.

Argued March 4th—decided September 19th, 1925.

ACTION to recover a portion of the purchase price of certain real estate paid by the plaintiffs under a contract of purchase alleged to have been breached by the defendant, brought to the Superior Court in Hartford County and tried to the court, *Jennings, J.;* judgment rendered for plaintiff for $6,000, and appeal by the defendant. *No error.*

Plaintiffs and defendant entered into a contract for
the conveyance of certain real property in Hartford
by defendant to plaintiffs, which contained a provi-
sion for the retention by the vendor of the sum of
$5,000 paid on account, in case the vendees failed to
perform.    Plaintiffs claimed nonperformance on the
part of defendant and brought an action, the complaint
in which alleged that defendant had owned for many
years the property in question, and on March 17th,
1921, defendant entered into a written contract with
plaintiffs to convey to them certain land and buildings
bounded northerly by land of G. F. Heublein, Incor-
porated;   easterly   by   High   Street;   southerly   by
Asylum Street, and westerly by land of J. D. Odell in
part and in part by land of Nettie Marks, or however
otherwise said real estate may be bounded with the
appurtenances thereof;   that $5,000 was paid by
plaintiffs to defendant on account of the contract, and
provision   made   for   further   payments   aggregating
$220,000; that it was provided that conveyance should
be made on June 17th, 1921, or within a day or two
thereafter, by a quitclaim deed, "and it was further
agreed that while said deed was to be a quitclaim deed,
the title to the premises should be free and clear of
incumbrances in the defendant at the time of said
conveyance, as evidenced by certificate of title pre-
pared by reputable counsel employed by plaintiffs."
That subsequently plaintiffs employed a reputable
attorney to examine the title to the property, and
ascertained that it was subject to incumbrances of
rights of way outstanding in others, and that defen-
dant was unable to convey title free from the same;
that said attorney reported to the plaintiffs as to the
title in writing, and the contents of the report were
disclosed to defendant; that the plaintiffs had made
all necessary arrangements to complete payment on

the contract, and were ready and willing to purchase the property upon the terms of the contract, but refused to do so when they learned that defendant's title was incumbered; that plaintiffs demanded return of the sum of $5,000 theretofore paid defendant, which the latter refused to refund. The contract of sale of the property (Exhibit A) and the certificate of title of the attorney examining same, are made part of the complaint as exhibits.

The first defense of the answer admits the ownership of the real property in question, and the execution of the contract of sale, Exhibit A, but denies that it fully expresses the agreement of the parties, or that the title was to be conveyed free from incumbrances, and that defendant was unable to perform the contract by reason of incumbrances. The remainder of the complaint is put in issue. The second defense (entitled by way of equitable defense) sets up a written offer of plaintiffs to buy the property, the acceptance of the same, the execution of the contract of sale, and that it expressed the agreement of the parties, except that on the north and west of the property there existed certain rights of way in favor of owners of other lands, the existence of which the plaintiffs knew when they made their contract, which in effect was that the property was to be conveyed subject to these rights of way; that on account of the necessary and beneficial characters of the rights of way in connection with the property, none of the parties regarded the same as incumbrances within the meaning of the word as used in the contract; that because of this mutual misapprehension all of the parties neglected to inform the draftsman of the contract of the existence of these rights of way, and hence the contract failed to mention and except them; that had the instrument set forth the real contract fully and

accurately, it would have contained an exception of the incumbrances, or a statement that they were not regarded as such; that on June 17th, 1921, defendant tendered a good and sufficient quitclaim deed, bounding the property in the manner above set forth, with an additional clause that "the northerly portion of said premises and a part of the westerly portion of said premises as delineated on said map are subject to rights of way in adjoining owners as the same may appear of record"; that there was also annexed to said deed a map of the premises made in May, 1914, showing the existence and location of the rights, and a blue print thereof had been in the possession of plaintiffs prior to the time when plaintiffs made their offer for the property; that the plaintiffs declined to accept said deed and carry out the contract, solely on the expressed ground that the deed contained the clause above quoted as to incumbrances, and had ever since refused to perform, after repeated demands, although defendant had at all times been ready and willing to perform; that by reason of the refusal of plaintiffs to perform, defendant had elected to retain the sum of $5,000 as liquidated damages and had waived its claim for specific performance, and on February 1st, 1922, had informed plaintiffs of its election; that defendant had performed all of its agreements under the contract, except as prevented by the refusal of plaintiffs to perform their agreements; that for the reasons aforesaid defendant is equitably entitled to retain the sum of $5,000 by it received from plaintiffs as liquidated damages, and plaintiffs are not entitled to recover the same. The reply of the plaintiffs puts in issue practically all new matters alleged in the second defense.

The trial court, in its finding of facts, found the ownership of the property for many years prior to the

contract of sale to have been in defendant, and that prior to March 17th, 1921, plaintiffs and representatives of defendant negotiated with reference to a sale of the same to plaintiffs, at which time plaintiffs had in their possession a sketch of the premises, made part of the finding (Exhibit 4); that on the day last named certain representatives of the defendant, met at the office of Arthur L. Shipman, Esquire, for many years a member of the bar of Hartford County and a skilled lawyer, for the purpose of drawing up an agreement of sale. Mr. Tucker, chairman of the society's committee of the defendant church, stated to Mr. Shipman the terms of the proposed contract (Exhibit A of finding), which was duly executed the next day by the parties thereto, when plaintiffs paid defendant the sum of $5,000.

At the time of drafting the agreement, Mr. Shipman had not been informed of the existence or location of the gangway and did not know of its existence or location. At all times during the negotiations between the parties this gangway existed as a well-defined cindered driveway plainly visible on a physical examination of the real estate in question, but such physical examination would not have revealed the location of the property line of the defendant's land at the points where the gangway existed. The intention of the parties in drawing the contract was to contract for the sale of the entire tract of land on the northwest corner of Asylum and High Streets, the fee of which was in the defendant. This finding of intent by the court is a conclusion from subordinate facts. Subsequently the plaintiffs employed George H. Gilman, a reputable attorney who has practiced law for many years in the city of Hartford, to search the title to the property. It was agreed by counsel at the trial that the report of Mr. Gilman as to the title to this property was cor-

rect, and it is made part of the finding (Exhibit C). All the rights of way mentioned in the report of George H. Gilman were in existence on March 17th, 1921, and on June 16th, 1921, the plaintiff George LeWitt notified Mr. Shipman that a search of title to the property showed a right of way across the same and called the attention of Mr. Shipman to this fact. On June 17th, 1921, the defendant tendered to the plaintiffs a duly executed quitclaim deed of the premises in question, with a map of the property annexed, and containing the clause with reference to a right of way heretofore quoted.

The plaintiffs refused to accept the deed tendered, as above stated, and refused to pay the balance of the purchase price, as provided for by the agreement. On June 17th, 1921, the plaintiffs were ready, willing and able to carry out the terms of the contract on their part to be performed. On June 23d, 1921, the defendant brought an action in the Superior Court in Hartford County against the plaintiffs in the present action, making allegations substantially similar to those contained in the answer in the present case, and claimed a reformation of the agreement of March 17th, 1921, specific performance of the agreement as reformed, and $5,000 damages. On or about February 1st, 1922, the defendant withdrew this action, and notified the plaintiffs in writing that it had withdrawn the same, and elected to retain the $5,000 received from the plaintiffs as liquidated damages in accordance with the provisions of the contract. On March 22d, 1922, the plaintiffs brought the present action claiming $5,000 damages, which is reasonable in amount as stipulated or liquidated damages for a breach of a contract such as the memorandum of agreement between the parties in view of the magnitude of the transaction.

The court reached the following conclusions: "1. The rights of way on said property as above described constituted incumbrances thereon within the meaning of that word as used in the contract. 2. On June 17, 1921, and for several days thereafter the defendant was unable to comply with its undertakings in the agreement, in that it could not transfer title to the premises in question free and clear of incumbrances. 3. On June 17, 1921, at the time of the tender of the deed by the defendant to the plaintiffs as above set forth, the plaintiffs were justified in treating the contract as broken by the defendant. 4. The plaintiffs were entitled to recover the $5,000 paid by them as above described with interest from June 17, 1921, to the date of judgment."

The defendant moved the court to make certain corrections of its finding, which were made. with the following exception: "Prior to the execution of said memorandum of agreement of March 17, 1921, the plaintiffs had visited and inspected said real estate and had observed said gangway." The court refused so to find, on the ground that there was no evidence that plaintiffs had at the time of their visit "observed said gangway." The refusal to make this correction is assigned as a reason of appeal.

Certain rulings on evidence occurring during the hearing of the cause form a part of the appeal record.

Arthur L. Shipman, called as a witness by defendant, after testifying as to his employment to draw the contract of sale, was asked whether there was any discussion at the time he was receiving instructions as to giving a warranty deed, and upon his answering "Yes," was further asked what the discussion was, and on objection, this question was excluded on the ground that the allegations of the answer could not be sustained by parol evidence tending to vary the terms

of the written contract, and an exception taken. Mr. Shipman was further asked whether there was any discussion at a conference participated in by Mr. LeWitt and others as to gangways on this property. This question was excluded on the same ground, and exception taken. The witness was asked a further question as to whether, before the instrument was drawn, there was any talk about incumbrances, and upon his answering "Yes," he was further asked to give the conversation; this evidence was excluded on the same ground, and exception taken.

Mr. Herbert F. Fisher, the broker who conducted the negotiations between the parties on behalf of the defendant, gave testimony as to the gangways and open spaces around the church buildings, and was asked as to a conversation, before the signing of the contract, with LeWitt, one of the plaintiffs, as to these gangways, to which testimony objection was made upon the same ground as in the case of Mr. Shipman, and was excluded, and exception taken. Mr. Howard, a member of the society's committee, testified that he was present at Mr. Shipman's office when the contract was discussed and drawn up, and that Mr. Le-Witt was present. He was further asked whether Mr. LeWitt made any statement indicating that he knew of the existence of the rights of way. This question was excluded on the same ground heretofore mentioned, and exception taken. He was also asked whether he ever heard it suggested that defendant was expected to get rid of the rights of way before conveyance to plaintiffs. The question was excluded on the ground before mentioned, and exception taken. He was further inquired of as to a certain sketch of the property which he had with him at that time, referring to Exhibit 4, and what discussion he had concerning the same with Mr. LeWitt. This last question was

excluded on the ground before mentioned, and exception taken. Mr. Countryman was called as a witness by defendant, and asked this question: "When you asked Mr. George LeWitt if he didn't know prior to the signing of the agreement that there were rights of way on the land, what did he reply?" This question was excluded on the before-mentioned ground, and exception taken. He was also asked whether or not Michael LeWitt stated to him that he understood the property which they were buying only ran to the right of way, and the question was excluded, and exception taken on the before-mentioned ground. William Tucker, chairman of the defendant society's committee in March, 1921, testified that he was present with Mr. LeWitt in Mr. Shipman's office when the contract was drawn up, and was asked whether, while LeWitt was present, there was any talk as to incumbrances on the property. This question was excluded, and exception taken on the before-mentioned ground. He was also asked in what sense he used the word "incumbrance" when he signed the agreement with the LeWitts, and the question was excluded, and exception taken.

The defendant assigned these rulings upon evidence in its reasons of appeal, and other reasons of appeal relied on are as follows:

"1. The facts set forth in the finding do not support the first conclusion of the trial court because in view of the general language used to describe the land in the agreement between the parties it does not follow the rights of way constituted incumbrances on said property even if they are to be deemed incumbrances upon the land as particularly described by metes and bounds in paragraph one of the finding.

"2. The facts set forth in the finding do not support the second conclusion of the trial court because the

facts do not establish the existence of any incumbrance upon the property as described in the agreement.

"3. The facts set forth in the finding do not support the third conclusion of the trial court because the facts do not show that the defendant had broken the contract, or that the defendant was unable on June 17th, 1921, to perform its part of the same.

"4. The facts set forth in the finding do not support the fourth conclusion of the trial court because the facts establish that the plaintiffs refused to perform the contract and by the terms thereof defendant was justified in retaining said $5,000 as liquidated damages. . . .

"9. In overruling defendant's claim that the existence of the gangway or rights of way did not prevent defendant from performing its part of said agreement of March 17th, 1921, and that there was no failure of consideration for the payment of said $5,000 by the plaintiffs to the defendant."

Further facts appear in the opinion.

*John T. Robinson,* with whom was *Arthur L. Shipman,* for the appellant (defendant).

*Josiah H. Peck* and *Donald Gaffney,* with whom, on the brief, was *Bernard F. Gaffney,* for the appellees (plaintiffs).

KEELER, J. The motion to correct the finding was properly denied by the trial judge for the reason given by him. Quite likely the first part of the paragraph quoted in the statement might have been found had it been asked for without the last five words. The trial judge had a right to treat the requested paragraph as a whole. The judge was asked to find as a fact that plaintiffs had observed the gangway, not that they

had opportunities of observation. The court has found that the gangway was a well cindered driveway, and the evidence of Fisher showed that George LeWitt had been on the driveway. That he observed anything especially is not hereby proven. But even if the appearance of the gangway showed its use by vehicular traffic, that would in no way indicate that adjoining owners had rights of way.

Passing to the questions raised by reasons of appeal one, two, three, four and nine, the defendant claims that the description contained in the agreement does not necessarily include the gangways, and that as a matter of construction the land covered by the contract was bounded by the inner lines of these gangways, and that rights in these latter would pass as appurtenances. This contention is negatived by the finding of Mr. Gilman in his certificate of title, agreed to as correct by defendant, also by defendant's express allegation in the fourth paragraph of its second defense that "there existed on said land of the defendant . . . certain rights of way in favor of the owners of other lands," and further by the terms of the deed which the defendant tendered plaintiffs and claimed they should accept, wherein it is expressly stated that the premises described and conveyed "are subject to rights of way to adjoining owners as may appear of record." It is further contended by defendant that the contract was not intended to be a conveyance of property, and since all parties were familiar with the property as it stood on the ground, but not with the property lines as regarding adjoining owners, they therefore added the words, "however otherwise said real estate may be bounded," to allow for any error of description of any sort. We cannot infer any such intent from these words, in connection with the surroundings. Having reference to ordinary terms

used in conveyancing, these words would seem to be applicable to the names of adjoining proprietors, and equivalent to the often used terms "now or late" and "now or formerly" applied to certain designated persons. Such words are in universal use, since when drawing a contract or deed, it is the exception rather than the rule that the draftsman has at his disposal the information necessary to give with accuracy the up-to-date ownership of surrounding tracts. The finding of the court that the parties intended to contract for the sale of the fee of the entire corner tract of which defendant owned the fee is entirely justified by the subordinate facts found.

The principal point at issue between the parties is raised by the rulings made by the trial court upon evidence offered by defendant to sustain the allegations of its second (equitable) defense. The plaintiffs are suing to recover money had and received by defendant and unlawfully retained by it, since a failure of consideration arose out of the refusal of defendant to perform its contract of sale of land. The consideration for the payment of the money was the full and complete performance of the contract, which until full performance remained executory. The evidence was offered to show a mistake in the contract, whereby it failed to evidence the true intent of the parties, and was to the general effect that plaintiffs, prior to the execution of the contract, were fully aware of the existence of certain rights of way and did not regard them as incumbrances, and that the agreement of sale did not contain their real contract. No fraud or misrepresentation is alleged in the second defense. The court in substance held that this was an attempt to reform a written contract, unambiguous in its terms and not tainted in any way by fraud, by parol evidence, and then to enforce the same in favor of defen-

dant. The court held that under our law this could not be done and excluded the evidence.

Defendant, prior to bringing the action in question, had sued for a reformation of the contract. and a specific performance of the same, but had withdrawn the same, as stated in its brief, by reason of the decision of this court in *Osborn* v. *Phelps,* 19 Conn. 63, and affirmed in *Bryant Electric Co.* v. *Stein,* 95 Conn. 211, 213, 111 Atl. 204, wherein we said: "There is a difference of judicial opinion upon the question whether a court of equity may first reform a contract by the introduction into it of a new term derived from parol evidence, and then enforce it as a written contract sufficient under the statute of frauds. . . . But in this State the question is no longer open."

In considering the effect of these decisions, the defendant claims that even though its claim cannot be made the subject of an action in the form brought by it and then abandoned, still that allegations similar to those contained in it may be used defensively in an answer, and relief obtained to the extent of allowing it to retain the $5,000 paid as earnest money under the contract.

Professor Williston, in his work on Contracts (Vol. 3, § 1555), observing that in some jurisdictions contracts relating to land are reformed and enforced though within the statute of frauds, continues: "In other decisions, however, American courts have declined to reform such an executory contract, especially if it is sought to enlarge the terms of the writing, unless there has been such part performance or other circumstances as will make a failure to reform work a fraud upon the complainant. The latter cases seem sound. Where the only effect of a refusal to reform a contract is the loss of an executory bargain which the parties intended to make, it seems impossible to

give relief on any principle that would not justify the entire destruction of the statute.   There seems little reason to distinguish between enlarging the terms of the writing and diminishing them.   In either case a contract is being enforced at variance with the writing and to the disadvantage of one of the parties."   See also *Wainwright* v. *Talcott,* 60 Conn. 43, 53, 22 Atl. 484.

Defendant seeks to avoid the operation of our decisions above quoted, by claiming the right to use defensively such facts as are alleged in the second defense, and also claims that we have in effect overruled these decisions, and suggests that we now administer the *coup de grace.*

As bearing upon the claim first stated, we will briefly consider the matter from the point of view of procedure.   Defendant, by the provisions of the Practice Act, undoubtedly had the right to plead an equitable defense in the present action (General Statutes, § 5554) and was not compelled to resort to a separate action to enforce an equitable claim which he sought to establish.   The Practice Act created no new substantive rights.   "The substitution of our Practice Act for the common-law system of pleading has not changed the situation save as it has abolished certain formal distinctions and employed a new nomenclature.   The same facts will entitle one to the same redress as before, and to no other redress."   *Avery* v. *Spicer,* 90 Conn. 576, 581, 98 Atl. 135.   The same rule which prevents a reformation of a contract by parol evidence and then performance thereof, *a fortiori* would preclude reformation and recovery of damages for breach of the reformed contract.   The defendant is here seeking damages, liquidated damages, yet as to its legal position, it is in the same position as if the contract had not provided for liquidated damages, and

it was suing for an unliquidated sum. It follows that defendant cannot prevail in its contention unless it can show some exception to the doctrine just considered or some modification of it in the line of its claims. We pass to a consideration of the cases cited by defendant in this behalf. In *Fisk's Appeal*, 81 Conn. 433, 71 Atl. 559, it was held that parol evidence, though inadmissible to support a claim to lands, was competent to prove an accountability for the proceeds of a sale. The case was also concerned with constructive fraud. It is not germane to the present discussion. *Schempp* v. *Beardsley*, 83 Conn. 34, 75 Atl. 144, deals with an oral agreement to support a person for life. No written instrument is involved. In *Downer* v. *Cheseborough*, 36 Conn. 39, the case did not turn in any way upon the general statute of frauds, but was concerned with a special statute of New York requiring a writing to vary the implied legal effect of an indorsement of a note. This court held that the law to be applied was the then law of Connecticut allowing oral evidence to be given to show the nature of the indorsement, that is, that the law merchant of Connecticut and not that of New York applied. In *Nanos* v. *Harrison*, 97 Conn. 529, 117 Atl. 803, the question of the defensive effect of the lease turned upon its conclusiveness in an action setting up constructive fraud. The case in no way sustains any claim made by defendant. In *McCusker* v. *Spier*, 72 Conn. 628, 45 Atl. 1011, reformation of a deed asked for by defendant was denied on the ground that no mutual mistake was shown, but plaintiffs were denied relief in that they did not come into equity with clean hands. Furthermore, the case is concerned with an executed contract. In *Blakeman* v. *Blakeman*, 39 Conn. 320, the court dealt with an executed contract, by reforming a deed. The same is true with regard to

*Knapp* v. *White,* 23 Conn. 529; *Allis* v. *Hall,* 76 Conn. 322, 56 Atl. 637; *McCusker* v. *Spier,* 72 Conn. 628, 45 Atl. 1011; *Humphrey* v. *Gerard,* 83 Conn. 346, 77 Atl. 65; *Butler* v. *Barnes,* 60 Conn. 170, 21 Atl. 419; *Jenner* v. *Brooks,* 77 Conn. 384, 59 Atl. 508; *Corticelli Silk Co.* v. *Slosberg,* 101 Conn. 44, 124 Atl. 818.

*New York Insulated Wire Co.* v. *Kasden,* 83 Conn. 215, 76 Atl. 294, involves no question of reformation of any instrument. It was concerned with the correction of an error in a merchandise account. In *Park Bros. & Co., Ltd.* v. *Blodgett & Clapp Co.,* 64 Conn. 28, 29 Atl. 133, the court held that a contract for delivery of merchandise might be reformed for a mistake of law as well as of fact. The extended discussion in the opinion is concerned with this point. There was no claim made in the case involving the doctrine of *Osborn* v. *Phelps,* 19 Conn. 63, nor is that case and other adjudications following its authority, referred to. *Bronson* v. *Leibold,* 87 Conn. 293, 87 Atl. 979, was an action to cancel a deed, by reason of unilateral mistake. There was no question of mutual mistake, or reformation involved. No question of reformation was involved in *Romanoff* v. *DeSanto,* 101 Conn. 504, 126 Atl. 694. The action was for damages for refusing to take title under a contract of sale of real property. The defense was the existence of a lease for one month, not mentioned in the contract. The court admitted parol evidence, and held that under the facts the lease was not an incumbrance.

From the above review of the cases cited by defendant, we cannot conclude that the doctrine of *Osborn* v. *Phelps* has in any way been modified, or that it is in any way inapplicable where the facts invoked are pleaded defensively rather than in an original complaint, or in a cross-complaint. Nor can we hold that it in effect has been overruled or that it should be over-

ruled. It represents a distinction, vital, logical and just, betwen executory and executed contracts as regards their reformation by means of parol testimony, and that to give relief such as is claimed in the instant case, as Williston observes in the extract before quoted, is impossible "on any principle that would not justify the entire destruction of the statute."

We have left, then, a contract of sale of land, drawn with exceptional care for details by a skilled and learned draftsman, entirely without ambiguity, and as to the execution of the same no fraud, actual or constructive, is claimed, which the plaintiffs declined to perform on account of admitted incumbrances upon the property to be conveyed. The consideration moving to the plaintiffs had failed, and upon the facts found the defendant had no right to retain the earnest money paid, and the judgment rendered was correct.

There is no error.

In this opinion the other judges concurred.