34  501
70  356

34  501
74  412

GEORGE A. HAMILTON AND ANOTHER, ADMINISTRATORS, *vs.* ISAIAH NUTT AND ANOTHER.

One who has knowledge of the existence of a deed, to which he has access, and which affects the title to property in which he is interested, will in equity be presumed to have knowledge of the contents of the deed.

And where a purchaser cannot make out a title but by a deed which leads him to a certain fact, he shall be presumed to have knowledge of that fact.

A deed under which the grantee claimed was made subject to "two mortgages for $2000," and contained a warranty against all claims "except said mortgages." There were two prior mortgages, one of $1500 which was recorded and of which he had actual knowledge, and one of $2000 which was not recorded, and of which he had no notice except such as was given by his deed. He did not in fact read his deed and was not aware of the clauses referred to. Held that he would be presumed to know the contents of his deed, and that the notice of his deed was sufficient to put him on enquiry, and to charge him with knowledge of the unrecorded mortgage.

Where one advances his money under a promise of a deed and before the deed is given receives notice of a prior unrecorded mortgage, his deed will be postponed to such mortgage if he might by proper diligence have recovered his money back.

To postpone a party taking a deed under notice, implied or actual, of a prior unrecorded deed, it is not necessary that there should have been an actual fraudulent intent on his part. The law infers fraud in all such cases.

BILL for a foreclosure of a mortgage, brought by the petitioners as administrators of Zadoc P. Leach, deceased. The mortgage was to secure the sum of $2000 and was given by the respondent Nutt to the said Leach. The defence was made by the other respondent, Charles Hull, who held a later mortgage on the same property. The following facts were found by a committee.

The estate embraced in the mortgage was purchased by Nutt of Leach, and the mortgage was executed and delivered at the time, with two notes of $1,000 each secured by it, as security for part of the price.

While Nutt was negotiating with Leach for the purchase of the estate embraced in the mortgage, he was also negotiating with the respondent Hull for a loan of $500. Nutt told Hull that he was endeavoring to purchase the property in question from Leach and promised him that if he would loan him $500 he would give him a mortgage on the property for the security of the $500, and also of the sum of $1400, which Nutt already owed Hull, making $1,900 in the whole; which mortgage so to be given Nutt assured Hull should be next after a prior mortgage given upon the estate by Leach to one Flint on the 7th of April, 1864, to secure the payment of the sum of $1,500, and recorded the same day. Leach did not know of the agreement between Hull and Nutt, that Hull should have the first mortgage after the Flint mortgage, nor ever assented to it in any way. The deed from Leach to Nutt and the mortgage back to secure a part of the purchase money, with the two notes of $1,000 each, were prepared and executed by the parties on the 7th of February, 1865, but were not delivered until the 11th day of February. At or about the time of the delivery of the deed and of the notes and mortgage, which were delivered at the same time by Leach and Nutt, each to the other, Nutt paid to Leach $500. The price for which Nutt purchased the estate was $4,000, of which $1,500 secured by the mortgage to Flint was assumed and agreed to be paid by Nutt as a part of the purchase money, and the other $500 was paid in cash, leaving $2,000 to be secured by mortgage. The mortgage from Nutt to Leach through inadvertance was not recorded until June 15th, 1865. Leach intended to have had it recorded as soon as it was delivered to him and supposed it was recorded until that time, when he discovered that it had in some way been neglected, and he then had it recorded immediately. On the 11th of February, 1865, Nutt showed to Hull his deed from Leach, whereupon Hull gave to Nutt $500, as agreed, and directed

him to go to D. B. Booth, Esq., and have a note and mortgage drawn for the $1,900, as agreed between them, which was accordingly done, and the note and mortgage for $1,900 were brought to him duly executed by Nutt on the same day. This mortgage contained a covenant against all encumbrances " excepting two mortgages for $2,000 ; " and a warranty against all claims " excepting said mortgages." Hull having been assured by Nutt that he was to have a mortgage next to the prior one of Flint, and not knowing that any mortgage had been executed to Leach, put his mortgage in his pocket on receiving it, and not thinking it important to have it immediately recorded, did not attend to putting it on record until the 17th of February, 1865, when it was duly recorded. Hull did not read his mortgage on receiving it, and was not aware of the existence of the clauses above stated therein, nor did he learn of the existence of the same till more than a year afterwards. All the deeds referred to in the case were drawn by Mr. Booth and witnessed by him. The $500 advanced as aforesaid by Hull to Nutt, before receiving the mortgage of $1,900, was repaid by Nutt to Hull on the 11th of April, 1865, and was endorsed on the note which the mortgage was given to secure. Nothing was ever paid on any of the mortgages except this $500. The value of the mortgaged property was found to be $3,000.

On these facts the case was reserved for the advice of this court.

*Taylor* and *Brewster*, for the petitioners.

1. The recital in the deed from Nutt to Hull, " clear of all incumbrances except two mortgages of $2,000," makes Hull a purchaser with notice of both prior incumbrances. He already knew of the Flint mortgage of $1,500. The mortgage to Leach was the only other prior mortgage and answered precisely to the description, being a mortgage of $2,000. " Recitals in a deed are offered as primary evidence which cannot be averred against and which form a muniment of title binding parties and privies." 1 Greenl. Ev., § 23 ; 2 Am. Law. Reg. N. S., 3, § 3. " In all cases where a

purchaser cannot make out his title, but by a deed which
leads him to another fact, whether by recital or otherwise, he
will be deemed conusant thereof; for it was *causa negligen-
tiæ* that he sought not after it." 3 Sugden on Vendors, 474 ;
*Jones* v. *Smith,* 1 Hare, 43 ; 2 Fonbl. Eq. (4 Am. ed.) 518 ;
Powell on Mortgages, 571; 2 Hilliard on Mortgages, 405 ; Hil-
liard on Vend. & Pur., 400 ; Newland on Cont. in Eq.,
511.

2. A purchaser who has sufficient information to put
him on inquiry is chargeable in equity with full notice. *Bos-
well* v. *Goodwin,* 31 Conn., 84 ; *Sigourney* v. *Munn,* 7 id.,
333 ; *Peters* v. *Goodrich,* 3 id., 146 ; *Booth* v. *Barnum,* 9 id.,
286 ; *Curtis* v. *Mundy,* 3 Met., 405 ; *Blackwood* v. *Jones,* 4
Jones' Eq., 654 ; 1 Story's Eq. Jur., § 400; Willard's Eq.,
249 ; *Berry* v. *Mutual Ins. Co.,* 2 Johns. Ch., 612. Unless
it is positively found that he has used due diligence, and
failed of information after full investigation. *Williamson* v.
*Brown,* 15 New York, 354. Statements of the mortgagor
alone are not enough. *Berry* v. *Mutual Ins. Co.,* 2 Johns.
Ch., 612. But in this case the purchaser " pockets " his deed
and gets it afterwards recorded without looking at its con-
tents. Grosser negligence it would be difficult to ascribe to
a mortgagee. " An inquiry of the grantor and the attesting
witnesses would seem to be clearly within the line of the
duty of a grantee once put on inquiry." *Nute* v. *Nute,* 41
N. Hamp., 60. Unless the first grantee negligently furnishes
the fraudulent grantor with the means of deception, as by
leaving his deed with him. *Rogers* v. *Jones,* 8 N. Hamp.,
264.

3. Notice of a deed is notice of its contents. *Mertins* v.
*Joliffe,* Ambler, 311 ; Hilliard on Vend. and Pur., 403 ; *Pat-
ten* v. *Moore,* 32 N. Hamp., 382 ; *Powell* v. *Devlin,* 2 Ball &
B. 416 ; *Dunham* v. *Dey,* 15 Johns., 555 ; (overruling *Dey*
v. *Dunham,* 2 Johns. Ch., 182;) *Berry* v. *Mut. Ins. Co.,* 2
Johns. Ch., 611 ; *Cuyler* v. *Brady,* 2 Caines Cas., 26.

4. The same attorney drew both of the deeds in question.
Notice to a man's attorney, agent, or counsel is sufficient no-
tice to him. Powell on Mortgages, 588, 591 ; Hilliard on

Vend. and Pur., 408; 1 Story's Eq. Jur., § 408; Newland on Cont. in Eq., 505; *Hargrave* v. *Rothwell*, 2 Keen, 154. Such notice is not constructive but actual. *Lenehan* v. *McCabe*, 2 Irish Eq. R., 342.

5. How the recitals in Hull's deed when recorded would have affected subsequent incumbrancers is another and totally different question. See article by Judge Redfield in 2 Am. Law Reg., N. S., 3, and *Speer* v. *Skinner*, 35 Ill., 282. So that the doctrine of "convenient certainty of description in mortgages," established in the Connecticut cases, (*Pettibone* v. *Griswold*, 4 Conn., 158;) *Stoughton* v. *Pasco*, 5 id., 442; *Sandford* v. *Wheeler*, 13 id., 165; *Hart* v. *Chalker*, 14 id., 77; *Merrills* v. *Swift*, 18 id., 257; *Lewis* v. *DeForest*, 20 id., 427; *Mix* v. *Cowles*, id., 420,) and in Massachusetts, (*Deming* v. *Lincoln*, 13 Met., 200,) has no application in this case, where the junior incumbrancer has the double notice of a recital which acts as an estoppel in his own deed, and the full knowledge of his attorney who drew the former deed. The doctrine of those cases would only apply to the description in our deed, not in the respondent's deed, so far as this case is concerned.

6. As to the equities. The petitioners have $1,500, secured on a debt of $3,500, and the court finds no negligence, but a simple mistake on the part of the deceased in not having his mortgage recorded first. The respondent Hull gets his mortgage of $1,900, by advancing $500; *which* $500 *is repaid in a few months*. His mortgage, so far as the $1,400 now due is concerned, was a voluntary conveyance without consideration, and if not presumptively fraudulent, (see *Webster* v. *Van Steenberg*, 46 Barb., 211;) this fact should bear strongly on the question of notice, and of the *bona fides* of the junior incumbrances. So far as Hull placed any reliance on the false statements of Nutt (made it will be noticed *before* the delivery of our deed,) the ordinary rule applies, "of two innocent persons, he who occasions the confidence by which the loss is caused ought to bear it." *Rogers* v. *Jones*, 8 N. Hamp., 264; *Conner* v. *Hill*, 6 Louis. Ann. R., 7; *Berry* v. *Mut. Ins. Co.*, 2 Johns. Ch., 612.

*White* and *Booth* for the respondents.

1. An unrecorded deed is no evidence of title as against third persons. The language of the statute is plain and explicit: " No deed shall be counted good and effectual to hold such houses and lands against any other person or persons but the grantor or grantors and their heirs, unless recorded as aforesaid." Gen. Statutes, 539, sec. 30.

2. The only exceptions to the operation of the statute as against subsequent purchasers or incumbrancers, is where *actual* notice has been given to them of the prior deed. And it is well settled by a long course of decisions in equity, that this notice must be such, and so clearly proved, as to make it fraudulent in the purchaser to take or register any conveyance in prejudice to the known title of the other party. 1 Story Eq. Jur., §§ 397, 398; *Curtis* v. *Mundy*, 3 Met., 405; *Pettibone* v. *Griswold*, 4 Conn., 158; *Stoughton* v. *Pasco*, 5 id., 442; *Shepard* v. *Shepard*, 6 id., 37; *Wheaton* v. *Dyer*, 15 id., 307; *Bush* v. *Golden*, 17 id., 594; *Dey* v. *Dunham*, 2 Johns. Ch., 182. The case cited by the petitioners of *Berry* v. *Mutual Ins. Co.*, 2 Johns. Ch., 612, is decidedly in our favor. In that case the first mortgagee, in point of time, was also first of record, and the case turned upon the neglect of the second mortgagee to have his deed recorded. In *Dey* v. *Dunham*, Chancellor Kent, (and there is no higher authority in this country,) after giving the matter a most thorough and exhaustive examination, says: " Notice that is to break in upon the registry acts must be such as will affect the party with fraud;" and, " the ground of the numerous decisions on this subject seems to be the actual fraud of the party in taking a conveyance, with knowledge of the fact, and with intent to defeat it." And nothing can be stronger than the language of Lord Alvanley in *Jolland* v. *Stainbridge*, 3 Ves., 478. He says: " The person who takes subsequently must know exactly the situation of the prior deed, and have meant to defraud." The case shows that Hull had no actual notice of the mortgage to Leach, and that he was informed at the time he loaned his money to Nutt that there was no incum-

brance upon the property but the Flint mortgage, that mortgage being of record. He would not have advanced the $500 upon any other condition than that he was to have the next mortgage after Flint's, and he knew of no other until a year after he had taken his mortgage. These facts are expressly found by the committee. No fraud can be inferred, for the finding of the committee is too strong and clear upon this point. The utmost that can be said is, that he perhaps did not give the most careful examination to his own deed. But suppose he had examined it carefully and entirely. The exceptions upon which the petitioners rely were vague and uncertain, the amounts mentioned incorrect, and indeed the Flint mortgage might amount to about the sum with accumulated interest. No names were given of the prior incumbrancers, and no clue by which their names could be ascertained, unless by reference to the record, which disclosed the Flint mortgage only.

3. But it is claimed by the petitioners that, though no actual notice is given, if notice has been given sufficient to put Hull on inquiry, it is all that is required. In all the cases referred to by the petitioners it appears that such notice was given, that slight inquiry would have made the information full and complete, and that there had been no neglect on the part of the prior incumbrancers. Of whom could Hull inquire, but of his mortgagor, Nutt, and of him he did inquire, and was assured by him that Flint's was the only previous mortgage. The decisions in this state, in cases of concealed mortgages, have a strong bearing upon the point of what notice is required in such cases. *Booth* v. *Barnum*, 9 Conn., 286; *North* v. *Belden*, 13 id., 376; *Sumner* v. *Rhodes*, 14 id., 135; *Hart* v. *Chalker*, id., 77; *Merrills* v. *Swift*, 18 id., 257; *Hunt* v. *Mansfield*, 31 id., 488.

4. But the exceptions in the covenants of seizin and warranty, in the mortgage to Hull, were inserted without his knowledge or consent, and made after the loan of $500, upon which the deed is in fact predicated. The loan was made not only without any notice of the Leach mortgage, but with the express assurance that it did not exist, and his

deed was first recorded. It can make no difference in the equities of the case, that the $500 then loaned has since been paid, for he risked the loss of the $500 to obtain security on $1,400 of previous indebtedness, which he has now an equitable right to retain.

5. From all the facts shown it appears to be an attempted fraud by Nutt upon Hull. Can Leach, or his administrators, having been guilty of so great laches, take advantage of it? Leach obtained the $500 from Nutt, which Hull had loaned to him, after he had been permitted to see the deed from Leach to Nutt. Had the deed to Leach been recorded, or had Hull received notice of it in any other manner, the $500 would not have been paid to Leach, but he has obtained it, and now seeks to take advantage of his own laches.

6. But it is said that Hull is estopped by the recital in his own deed, and that he was bound to take notice of the exceptions in it. But this claim is directly against the authority above referred to, (*Dey* v. *Dunham*, 2 Johns. Ch., 182;) and while it is true that a man is estopped by his own deed, this was not his deed. The claim that Mr. Booth was his agent is entirely without foundation. He had drawn the deed from Leach to Nutt, which was a warranty, and which Hull had insisted on seeing before he would make the loan. Hull's only instructions to Nutt, who communicated them to Booth, were with regard to the terms and conditions of *his mortgage*, and the deed was to be drawn from the one which had been exhibited to him.

7. Should the relief prayed for in the petition be granted, it would open a wide door for fraud. A party may at any time agree with a prior incumbrancer to withhold his deed from record, and procure other sums under the same representations as in this case, making the same exceptions in his covenants. The statute regarding the record of deeds, which was intended to prevent frauds, would be rendered entirely useless, and no man could be safe in taking a second mortgage deed. Courts of equity have never gone so far. Their peculiar province is to relieve against frauds, not to render their practice more easy.

CARPENTER, J.   On the 11th day of February, 1865, Nutt purchased of Leach certain property, and mortgaged the same to secure a part of the purchase money.   Subsequently, but on the same day, he mortgaged the same property, with other property, to Hull, to secure an existing indebtedness of $1,400, and an additional indebtedness of $500 for money then loaned.   Hull's deed was first recorded, and must have priority unless under the circumstances it ought in equity to be postponed.

It will be observed that there was no improper motive on the part of Leach in withholding his deed from record.   It was through " inadvertence" merely ; and although it must be regarded as carelessness in him, yet Hull was not injured thereby, as he gave no credit upon the strength of it.

If Hull received his deed with knowledge of the existence of the prior unrecorded deed, he is justly chargeable with bad faith.   It is found that he did not have actual knowledge. It also appears that his own deed contains the clause, " excepting two mortgages for $2,000 ;" and the further clause, " excepting said mortgages."   He was aware of the existence of one prior mortgage, and the terms of his deed will be presumed to have given him notice of the existence of the other, unless the fact, found by the committee, that he had no knowledge of the existence of these clauses in his deed until over a year afterwards, will have the legal effect to repel that presumption.   That raises this question :—Shall a grantee in his own right, having had a reasonable opportunity to ascertain the contents of a deed under which he claims title, be permitted to aver that he is ignorant of its contents ?

Men of ordinary prudence will use all reasonable means to ascertain the state and condition of their own titles.   Hence we may lay it down as a rule, founded upon the experience of mankind, that one who has knowledge of the existence of a deed, to which he has access, and which affects the title to property in which he is interested, will, in equity, be presumed to have knowledge of the contents of the deed.   And generally, when a purchaser cannot make out a title but by a deed which leads him to another fact, he shall be presumed

to have knowledge of that fact. 1 *Story's Eq. Jur.*, § 400, and cases there cited. Under our recording system a deed duly recorded is constructive notice to all the world; and the law conclusively presumes that every person interested has knowledge, not only of the deed, but of its precise language, where that is material. These principles apply in full force to this case. If a man will, under certain circumstances, be presumed to have knowledge of the contents of the deed of another, how much more reasonable is it to presume that he has knowledge of the contents of his own deed. Occasional hardships may result from the application of this rule; but it is believed to be founded in sound policy, and that, in a large majority of cases, it will tend to prevent fraud and promote the cause of justice. Hull then must be regarded as having had notice, at the time he took his deed, that the property was subject to two prior mortgages.

That was sufficient to put him upon inquiry, and to charge him with a knowledge of such facts as might have been ascertained by inquiring. The suggestion that no answer or a false answer would have been given, cannot be admitted as an excuse for not inquiring. Such an excuse will hardly be allowed in any case—much less in a case like this, where the circumstances indicate several parties of whom inquiry might have been made, with every presumption that some at least, if not all, would have answered correctly.

. But it is said that Hull parted with a portion of the consideration of his deed, $500 in cash, before the deed was executed, and upon an agreement that he was to have this security; and having parted with his money without notice, he had a right to take and perfect his security, notwithstanding any subsequent notice of a prior incumbrance. In support of this proposition *Wheaton* v. *Dyer*, 15 Conn., 307, is cited. In that case Judge Sanford, by way of illustration, says:—
" Thus, if a person were induced to loan his money, upon an agreement that he should be secured by a mortgage of certain lands, he would not be deprived of his security by notice of an outstanding unrecorded deed, given him after he had parted with his money, and before he had obtained his mortgage

deed." The learned judge could not have intended by this to lay down an absolute rule applicable to all cases; for in connection with it he adds, " The case would be different, if he had the notice before parting with his money, *or in time to reclaim it.*" If in time to reclaim it, and he neglects to do so, he must take the consequences of his own folly. A party may also be guilty of gross negligence in parting with his money without security, or he may part with it under such circumstances as to indicate clearly that he did not give credit to the security. In these and similar cases it may admit of doubt whether he would be entitled to the protection of this rule.

In the case we have before us it does not appear whether Hull might or might not have reclaimed his money at the time he received his deed; nor does it appear whether he did or did not give credit exclusively to the promised security. Perhaps in each case either supposition would be consistent with the facts found. But it does appear that Hull loaned his money without any examination of the record, and therefore he could not have been deceived or misled by the failure of Leach to record his mortgage. Whether any or all of these circumstances combined ought to have the effect to defeat Hull's claim in this respect we need not now inquire, for it is expressly found that the $500 thus advanced was repaid on the 11th day of April, 1865, so that the mortgage now stands precisely as it would if it had been given originally as security only for the $1,400 prior indebtedness.

But it is said that the rule, if a person with knowledge of a prior unregistered deed takes a conveyance of the same property he takes subject to the prior deed, is founded in the fraud of the party taking the second conveyance, and that whenever the imputation of fraud is removed the rule does not apply; and that it does not apply in this case, as there was no actual knowledge, and therefore no actual fraud. This claim is based upon the idea that there is a distinction between actual and constructive fraud, and that the former is necessary in these cases. Such distinction, if any there be, will not aid the respondent. In cases of constructive

fraud courts will protect the injured party by giving him damages commensurate with the injury sustained; while the existence of an actual fraudulent intent will sometimes require the court to go further, and punish the wrong-doer by way of exemplary damages. All that the party requires in this case is to be saved harmless. His right to that does not depend upon the existence of a wrongful motive in the other party. In all these cases fraud is inferred from the taking of the second conveyance with notice of the first. We have endeavored to show that, under the circumstances of this case, the respondent is justly chargeable with notice. If so, the legitimate consequences of notice must necessarily follow.

The superior court is advised to grant the prayer of the petition.

In this opinion the other judges concurred.