SALVADOR A. ANDRETTA *vs.* FOX NEW ENGLAND THEATRES, INCORPORATED.

First Judicial District, Hartford, May Term, 1931.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued May 8th—decided July 29th, 1931.

*Allan K. Smith* and *Cyril Coleman,* for the appellant (plaintiff).

*Walfrid G. Lundborg,* for the appellee (defendant).

MALTBIE, C. J.   In 1913, Pasquale M. D'Esopo was the owner of premises known as 625-653 Main Street, in Hartford, and on March 7th of that year executed a lease to Sylvester Z. Poli of a theatre building thereon, for the term of twenty-five years, in which lease the annual rent was stated to be "of the amount prescribed in a separate agreement dated of even date herewith and executed by both parties hereto." The separate agreement so referred to was executed simultaneously with the lease. The lease was recorded, but the agreement was not. On August 23d, 1928, Poli

assigned his interests under the lease to the present defendant, and on April 17th, 1929, D'Esopo assigned to the Congress Bank and Trust Company of New Haven, as trustee, his interest in the moneys due under the lease. Both these assignments were seasonably recorded. Subsequently the P. M. D'Esopo Company succeeded to the title and interest of Pasquale M. D'Esopo in the premises and, later, a receiver for that company was appointed at the instance of the bank commissioner.

On June 24th, 1930, Salvador Andretta, the original plaintiff herein, made an offer to the receiver for the purchase of the premises 625-653 Main Street which offer was accepted and a deed was delivered by the receiver on July 11th, 1930, all with the approval of the court in the receivership proceedings. At and before the time when Andretta made his offer for the premises he knew of the lease, its assignment by Poli to the defendant, and the assignment of rents under it by D'Esopo to the Trust Company. Andretta did not know the actual terms of the separate agreement, but did know of it, was advised that the failure to record it might render the lease invalid as to him, and bought the property with the intention of ejecting the defendant as soon as he procured a deed. He also knew that the rents were being paid to the Trust Company. But he made no effort to learn the contents of the separate agreement except to inquire of some official of the receiver if it had it. He did telephone the Trust Company on the day the purchase was completed and was informed as to the amount of an unpaid balance upon a note at that bank, a matter the significance of which does not appear in the finding. The separate agreement was from a time long before Andretta's purchase of the property until the trial in the possession of the Trust Company at New Haven and the assignment of

rents to it referred to the agreement as annexed. On the day Andretta received his deed, July 11th, 1930, he gave the defendant notice to vacate the theatre building and on August 19th, following, commenced this action. December 16th, 1930, after judgment was rendered therein, Andretta conveyed to Pallotti, Andretta & Company, Incorporated; soon after a receiver for that company was appointed and was substituted in this court as party plaintiff.

The crucial contentions of the plaintiff in the trial court were that Andretta was a bona fide purchaser for value, without notice of the contents of the separate agreement regarding rent, that the lease and agreement were invalid and of no effect as against him and that he took the premises free of any incumbrance thereby created or arising therefrom. The trial court reached conclusions adverse to these claims, and the same questions are presented on appeal.

Section 5018 of the General Statutes provides that no lease of any building, land or tenement for more than one year "shall be effectual against any person other than the lessor and his heirs, unless it shall be in writing, executed, attested, acknowledged and recorded in the same manner as a deed of land." The separate agreement is referred to in the lease as an existing document, identifiable by its date and the signatures of the parties. The acknowledgment of the lease was undoubtedly sufficient to make valid not only the lease itself but also the separate agreement so incorporated in it. We are not called upon in this action to determine whether the recording of the lease without the agreement would constitute constructive notice to subsequent purchasers of the terms of the separate agreement, as well as notice of the provisions of the lease itself. One who purchases land with actual notice of unrecorded documents affecting title

to it buys subject to any rights created by them in others. *Wheaton* v. *Dyer,* 15 Conn. 307, 311; *Hamilton* v. *Nutt,* 34 Conn. 501, 511; *Mead* v. *New York, Housatonic & Northern R. Co.,* 45 Conn. 199, 225; *Lengyel* v. *Peregrin,* 104 Conn. 285, 288, 132 Atl. 459; *Beers* v. *Hubbard,* 105 Conn. 408, 135 Atl. 437; *Kulmacz* v. *Milas,* 108 Conn. 538, 543, 144 Atl. 32. The purchaser has such notice if he knows "facts which are sufficient to put a prudent man on inquiry which, if prosecuted with reasonable diligence, would certainly lead to discovery of a conflicting claim." *Lengyel* v. *Peregrin, supra.* In the instant case Andretta knew of the existence of the separate agreement. To be sure he did not know its terms but by his knowledge of the assignment of rents to the Trust Company, of which the finding states he was fully informed, he must have known that it was in the possession of the Trust Company; and he makes no pretense that had he sought to inform himself he would not readily have learned its provisions. "Men of ordinary prudence will use all reasonable means to ascertain the state and condition of their own titles. Hence we may lay it down as a rule, founded upon the experience of mankind, that one who has knowledge of the existence of a deed, to which he has access, and which affects the title to property in which he is interested, will, in equity, be presumed to have knowledge of the contents of the deed." *Hamilton* v. *Nutt,* 34 Conn. 501, 509. Indeed the facts indicate very plainly that Andretta remained in wilful ignorance of the terms of the agreement in the hope that he might thereby improve his chances of ousting the defendant upon the claim that the lease was invalid. He is charged with notice, not merely of the existence of the separate agreement but of its terms, and is in the inequitable position of seeking to take advantage of the provisions

of the statute to avoid the rights of the defendant, of which he had sufficient knowledge to charge him with notice.

It is true that the statute says that no lease for more than one year "shall be effectual" against any other person than the lessor and his heirs unless executed and recorded like a deed of land. This is almost the identical language of the statute requiring deeds to be recorded under which has been developed the principles we have been discussing. General Statutes, § 5010. It is also very similar to the language of the statute as to conditional bills of sale, which makes them "absolute sales" except between the vendor and the vendee and their personal representatives, unless they are executed and recorded in accordance with its terms; General Statutes, §§ 4697, 4699; and under this statute we have held that one who buys property with actual knowledge that it is held under a conditional bill of sale is as much bound by its terms as though the bill of sale were filed for record. *Liquid Carbonic Co.* v. *Black,* 102 Conn. 390, 393, 128 Atl. 514.

The plaintiff relies very largely upon decisions holding mortgages invalid against subsequent purchasers or incumbrancers because of the insufficient statement in the mortgage of the debt secured. These decisions are not precisely analogous, because in each the entire mortgage was recorded and the question was whether as so recorded it afforded a sufficient description of the debt secured. But, that aside, they afford no support to the plaintiff's claim. From the earliest decision upon this question, *Pettibone* v. *Griswold,* 4 Conn. 158, it has been recognized that a mortgage is not necessarily invalid because a purchaser or creditor cannot obtain from the record alone precise knowledge as to the nature of the incumbrance; that where the

mortgage is not given to secure an ascertained debt it is sufficient if its terms are such as will put anyone interested upon an inquiry which, pursued with reasonable diligence, will lead to the discovery of the true nature and amount of the incumbrance. *Hubbard* v. *Savage*, 8 Conn. 215, 219; *Booth* v. *Barnum*, 9 Conn. 286; *Hart* v. *Chalker*, 14 Conn. 77, 79; *Rood* v. *Welch*, 28 Conn. 157, 162; *Bridgeport Land & Title Co.* v. *Orlove Co.*, 91 Conn. 496, 100 Atl. 30; *Lampson Lumber Co.* v. *Chiarelli*, 100 Conn. 301, 123 Atl. 909; *Stein* v. *Davidson*, 110 Conn. 4, 8, 147 Atl. 1. The latter principle is particularly appropriate to this case because the terms of the rent could not under the agreement of the parties be fixed with certainty when the lease was executed. It appears from the agreement that while a rental of $22,000 annually was mentioned this amount was subject to increase or diminution, according as the total cost of construction of the theatre building and appurtenances exceeded or proved to be less than $125,000, by a sum equal to seven per cent annually on the difference between such actual cost and $125,000. The actual amount of the rent therefore could not be definitely fixed until construction was completed.

We may well paraphrase our language in *Liquid Carbonic Co.* v. *Black, supra*, p. 395, in this way: The effect of the statute requiring leases for more than one year to be recorded is to render them ineffectual as to creditors and bona fide purchasers unless they are so recorded. Andretta was not a bona fide purchaser. "A bona fide purchaser is one who buys property of another without notice that some third party has a right to or interest in such property, and pays a full and fair price for the same . . . before he has notice of a claim or interest of such other in the property." *Alden* v. *Trubee*, 44 Conn. 455, 459. To be a bona

fide purchaser one must have "bought property without notice of the claims of third parties thereto, upon the faith that no such claims exist"; *Hayden* v. *Charter Oak Driving Park,* 63 Conn. 142, 147, 27 Atl. 232; and must have actually purchased in good faith, for an honest, legitimate purpose as contradistinguished from fraudulent and improper purposes. *Wood* v. *Moorhouse,* 1 Lansing (N. Y.) 405, 412; 8 Corpus Juris, 1147. Andretta was not therefore entitled to take advantage of the statute to declare the lease invalid.

The situation of the substituted plaintiff, receiver of Pallotti, Andretta & Company, Incorporated, is even less favorable than that of the original plaintiff Andretta. At the time of the conveyance the corporation not only had all the knowledge, and was subject to all the notice and obligations of inquiry attaching to Andretta but, it is stipulated, had actual knowledge of the contents of the separate agreement regarding rent, and of the pendency of this case and all proceedings therein.

The assignments pertaining to rulings on evidence were not pursued on brief or in argument and the record discloses no prejudicial error therein.

There is no error.

In this opinion the other judges concurred.