[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 STATEMENT OF THE CASE
The plaintiffs are the owners of a parcel of land located at and known as 61 Damascus Road in the town of Branford. In this action, they seek a determination of the common boundary line between their property and that of the defendant, each side asserting a different line. They also seek to quiet title to that parcel in dispute, being the land area lying between the two disputed boundary lines.
The defendant by way of a special defense, claims this area by adverse possession, if it is found that they did not already own it. CT Page 14395
 FACTS
The plaintiffs' property was originally part of the total property owned by the Soffer family and operated as a farm for many years.
On December 8, 1952, the plaintiffs' present parcel was created via a warranty deed from Louis Soffer to his son Jacob Soffer. Because of its significance to this case, the description of the parcel so conveyed is set out:
 Beginning at the North West corner of land herein conveyed at the intersection of land of Katherine Link Knapp, thence easterly along Stony Creek Road ninety (90) feet; thence Southerly at right angles to Stony Creek Road; along land of the Grantor one hundred fifty (150) feet; thence Westerly at a right angle to the last described line, along land of the Grantor to a stone wall separating land herein conveyed from land of Katherine Link Knapp; thence northeasterly along said stone wall to the point or place of beginning, bounded:
 NORTHERLY by Stony Creek Road; EASTERLY by land of the Grantor; SOUTHERLY by land of the Grantor; and WESTERLY by land of Katherine Link Knapp.
"Stony Creek Road" subsequently became known as Damascus Road
This description was plotted by the plaintiffs' surveyor and is set out on a map, Exhibit A. This layout depicts the plaintiffs' property as they thought it to be until June of 1996, when the defendant had erected inside the easterly and southerly bounds a crude fence, claiming it followed the actual boundaries of the parcel.
The layout advanced by the defendant first appears of record in 1968 when a map prepared in November of 1967 for the defendant was filed in the land records. This map, Exhibit E, is not signed by anyone but bears this notation: "Lines as agreed on by Soffer and Huzar." Huzar acquired title to the parcel in question in 1962 from Jacob and Diane Soffer and conveyed it to the plaintiffs immediate predecessor in title in 1979.
There is no boundary line agreement on file addressing this CT Page 14396 map or the notation, and the outline of the parcel does not follow the legal description of the deed prepared by Louis Soffer for the conveyance to Jacob Soffer. In particular, the two right angles have been replaced by first what appears to be a less than 90 degree angle and second by a 102 degree angle.
There is nothing in the plaintiffs' claim of title to put them on notice of this map, a revised layout or an agreement effecting their property lines.
 DISCUSSION I
In order to address the conflicting claims of the parties in a systematic fashion, the court will first address the defendant's special defense of adverse possession.
The defendant has produced no evidence to support such a claim. In response to particular questions, witnesses (i.e., Robert Dargan, Paul Knott, Patrick Marshall, Robert Knapp Jr.). indicated that neither the defendant nor his agents or employees performed any acts on or over the area between the two disputed boundary lines, nor did they conduct any activity or business in the area, or in any way treat it as the property of the defendant. There was evidence that the plaintiffs have treated portions of this area as their own.
The special defense is denied and the court finds that the defendant has not used and enjoyed the premises for more than 15 years openly, visibly, adversely, exclusively, continuously, and without interruption.
 II
The main issue in this dispute involves the respective title claims advanced by the parties. The plaintiffs rely on their chain of title and a description with meter and bounds. On the bounds in dispute, precise angles are set forth.
The defendant challenges this description as having been superceded by the 1967 map and an accompanying agreement with predecessors in titles of the plaintiffs.
 A. CT Page 14397
Connecticut has always been a "recording" state in the field of land transaction. Notice to purchasers and grantees has been embodied in statutory law since this state was a crown colony. Section 47-10 of our statutes sits forth this ancient policy:
 Sec. 47-10. Deeds to be recorded. No conveyance shall be effectual to hold any land against any other person but the grantor and his heirs, unless recorded on the records of the town in which the land lies. When a conveyance is executed by a power of attorney, the power of attorney shall be recorded with the deed, unless it has already been recorded in the records of the town in which the land lies and reference to the power of attorney is made in the deed.
This principle has been enunciated in Connecticut Standards of Title, Standards 2.7 and 2.10. Comment 1 to Standard 2.7 is significant as it addresses Section 47-10.
 "Stated affirmatively as to all subsequent bona fide purchasers for value and lien creditors without notice, all unrecorded deeds or other instruments relating to or affecting title to real property are ineffective. As to them, an unrecorded deed or mortgage is in all respects as if it did not exist. While it is true that a grantor of an unrecorded deed has no title or interest remaining in himself, yet his subsequent deed of that same property, to an innocent purchaser for value, voids the prior conveyance by virtue of the recording statute, and vests a title, which the grantor does not have, in the subsequent purchaser or lien creditor. Therefore, the rights acquired by a bona fide purchaser or judgment lien creditor, without notice of an unrecorded interest, are not determined by the actual title of the grantor, but rather by his apparent title."
Standard 2.10 extends the application of the recording act to easements and there are numerous cases addressing this subject. The policy is discussed in Buch v. Osborne et al, 74 Conn. 405
(1902) and Safford v. McNeil, 102 Conn. 684 (1925). Leases have been so included. Andretta v. Fox New England Theaters, Inc.,113 Conn. 476 (1931). Attachments. Greenberg v. Lotz Asbestos Co.,109 Conn. 433 (1929). Liens. Ashley Realty Co., v. MetropolitianDistrict, 132, Conn. 551 (1946).
There is no dispute that the plaintiffs received no notice of CT Page 14398 the alleged agreement between the defendant and the Huzars, as the map was not recorded so as to involve their claim of title and no boundary line agreement was recorded. The defendants' attempt to acquire title to a portion of the plaintiffs real property, that is the area between the disputed boundaries, is certainly covered by Section 47-10.
Finally, in a case very similar to this one, our Supreme Court had occasion to consider a claim arising out of the filing of a map. In that case, the owner of the property over which a driveway was sought to be delineated was found to have had actual notice of the interest and existence of the map. But, in its discussion, the court stated:
"The map in question was filed in the town clerk's office in accordance with these sections of the statutes and we assume that it was properly entered in the special index of maps. That would not however, be sufficient of itself to charge the plaintiff with notice of its contents. For so holding there are several reasons: In the first place, no description possible to such an index would, in many instances, suffice to apprise one who was searching the title to a particular tract and whose attention was not in some way directed to it, whether or not it was likely to be included in a map on file; again, the express provision in the statute that such a map shall "be deemed part of the deeds referring thereto," indicates clearly a legislative intent that it would not be notice of its contents except where the terms of recorded deeds pointed the way to it; and, finally one searching title to land is not bound to search the records at large, but only is bound with such facts as appear in the chain of title to the particular lot in question. Wheeler v. Young, 76 Conn. 44, 51, 55 A. 670; 2 Pomeroy's Equity Jurisprudence (4th Ed.) § 658. While under the circumstances in evidence we have held that the language in the deeds between the defendant and Kania, "or otherwise bounded and described as of records may appear," gave a sufficient expression of an intent on their part to incorporate the rights defined in the map into those deeds, we cannot hold that such an expression would point a searcher of title not acquainted with such circumstances to the map. In LeWitt v. Park Ecclesiastical Society, 103 Conn. 285, 130 A. 387, we recently had before us a similar phrase used in the description of a tract of land under contract of sale where the question was as to the inclusion in the contract of apportion of the tract covered CT Page 14399 by a right of way appearing of record, and we pointed out that such a phrase ordinarily is not intended to affect the extent of or interest in the land to be conveyed but only to supply deficiencies in the description as regards the ownership of adjoining tracts. Such a phrase falls far short of constituting a reference to a map on file and is not calculated of itself to cause a searcher to turn aside from following back the chain of title to examine the special index of amps, to see, if, perchance, there may be one there which bears upon that title. If the matter rested upon the effect of the land records alone, the plaintiff could not be charged with knowledge of the contents of the map. Kulmacz v. Milas, 108 Conn. 538, 541-2, (1928)."
 B.
An examination of the 1967 map and the circumstances surrounding it is in order. As noted above, the map was recorded but was not referenced in the plaintiffs' chain of title. Nor was it signed by the parties involved, Soffer and the Huzars. Nor was an accompanying agreement placed on the land records.
The court's immediate concern about the map is that, lacking all of the protections noted above, it becomes a simple matter for a party to prepare a map and place it on the land records. If the defendants' theory is adopted, he thus binds all parties affected and there is no way for its validity to be determined or questioned. In this case, there was no evidence, save the defendants, that the Huzars agreed to the map's delineations and that Exhibit E had been adopted by them.
As the plaintiffs suggest in their brief, to give this map the impact the defendant urges, would invite disaster in the preservation and maintenance of land records.
There are other weaknesses to this claim. Specifically, the June 16, 1987 deed from Jacob Soffer to Joseph Soffer in which the subject property was conveyed, makes no mention of the map, an agreement, or of any change in the description, even though the map changes the description in several respects.
In addition, the court notes that in all of the deeds in the Soffer chain of title between 1957 and 1995, the defendants parcel is described as 8 acres, more or less. Each deed excepts therefrom the plaintiffs' parcel, but it is then described CT Page 14400 exactly as it was described in the 1952 deed to Jacob Soffer, the original sole owner of the plaintiffs' particular parcel.
 C.
The defendant also argues that the deed by which the plaintiff took title is ambiguous, and by implication so were the previous deeds to Jacob Soffer, to Joseph Soffer, and to the plaintiffs' predecessors in title. He argues the description, exactly the same in all deeds, is ambiguous.
Ballentines Law Dictionary, 3rd edition, defines "ambiguity" as:
 "Doubtfulness or uncertainty, especially in the meaning of language arising from its admitting of more than one meaning; duplicity in meaning. Kraney v. Halsey, 82 Cal. 209, 22
(Promissory Note) 1137.
 A word or phrase is "ambiguous" within the meaning of the parol evidence rule only when it is of uncertain meaning and may be fairly understood in more ways than one. 30 Am J2d Ev § 1069.
See latent ambiguity; patent ambiguity."
The court can find nothing in the description appearing above (see "Facts"). Which is susceptible to more than one meaning. It is, as to the boundaries in question, as precise as it could be.
What the defendant is really suggesting in this ambiguity claim is that there is a disagreement as to which description prevails. The plaintiffs' description is not impossible to apply, and has been set out in Exhibit A, prepared by the plaintiffs' expert, Mr. Nott.
The court is unable to fathom, and the defendant hasn't offered, a reason for the defendant's surveyor to change the two right angles in the course of his attempting to find the actual boundaries set out in the deed description.
On the other hand, plaintiff's Exhibit A, presents a logical and almost exact depiction of the deed metes and bounds, even portraying an apparently modest error in the placement of the iron pipe in the street line of 2.48 feet. This iron pipe was CT Page 14401 apparently used by the surveyor who prepared the 1967 map and may have been placed by him.
Woven into the defendant's ambiguity argument is the suggestion that because of some previous movement of the stone wall marking the boundary between the plaintiff and his neighbor on the opposite side from the defendant, there is no way the original description can be implemental on the ground.
The court rejects that theory and finds support for its conclusion in plaintiff's Exhibit A and testimony of Mr. Nott. It is ironic that the movement of the wall on which the defendant relies was apparently the action of this defendant, as the court recollects the testimony of Mr. Knapp.
 III A.
The defendant also argues that the boundary he claims to be the proper one has been established by acquiescence.
In particular, he refers to applications for building permits submitted by two of the Huzar families in the years they owned the plaintiff's parcel.
There was no evidence offered as to who prepared these applications and from where the dimensions referred to came. However, the defendant argues that since the Huzars in their applications acknowledged certain measurements and their variance requests fitted the defendant's description and rear property line, they must have "acquiesced" in the 1967 boundary agreement referred to on Exhibit E.
That proposition, if it were totally accurate, would not, in the court's opinion, outweigh the conclusion outlined in Section I and II above.
But, these applications present almost as many questions as they purport to answer. The court notes, for example, that Andrew and Edith Huzar's application, Exhibit 9, shows a rear property line of 125 feet. On Exhibit A, this line measures 245 feet if the plaintiffs are correct and 180 if the defendant's boundary is correct. They also show their left and right side boundaries at 150 feet each, but even the defendant's boundary line shows the CT Page 14402 westerly (right) bound to be almost 180 feet.
When John Hazar made application for a building permit in 1962 (Exhibit 5), he described his two side boundaries as 175 feet each. His plot sketch shows a side yard of 60 feet between his house and the property line. This is incorrect, it is actually closer to 40 feet. He also shows the distance from the back of his house to the building line as either 75 or 82 feet, a measurement which does not coincide with the defendant's proposed line but is almost on the plaintiffs' line.
The defendant refers to Exhibit 6, in which a 42 foot measurement from the rear of the house to the property line is consistent with the defendant's claimed rear line. However, this is another sketch showing a 125 foot rear yard and the application was not signed by the owner.
With this set of contradictory figures, the court is not inclined to attach any significance to this evidence.
 B.
The fact that the plaintiffs and their predecessors did not make extensive use of the parcel in dispute is not seen by the court as indicative of their having accepted the defendant's proposed lines.
If that were the law, persons living on wooded tracts would be burdened with the chore of dashing all over their property to demonstrate dominion over it.
 CONCLUSION
It is concluded that the plaintiffs have sustained their burden of proof, by a substantial preponderance of the evidence and have demonstrated the strength of their title to the parcel in question.
Judgment may enter establishing the boundary between the parties as is indicated on Exhibit A. The contested parcel lying between the two contested boundaries is found to be the property of the plaintiffs.
No evidence on damages was presented so none will be awarded, but the defendant is ordered to remove the fence and other CT Page 14403 material he has placed on the plaintiff's property forthwith and to restore the area to its prior condition, insomuch as that is reasonably possible, by the said removal and the removal of any dead brush, limbs or other debris.
The court will hear the plaintiffs on a motion for counsel fees.
Anthony V. DeMayo Judge Trial Referee