In re UNIVERSITY TOWERS
OWNERS' CORPORATION,
Debtor–in–Possession.

University Towers Owners'
Corporation, Plaintiff,

v.

UTB Associates, Defendant.

Bankruptcy No. 99–32448.
Adversary No. 99–3086.

United States Bankruptcy Court,
D. Connecticut.

Aug. 27, 2001.

Hank D. Hoffman, Esq., Law Offices of Martin W. Hoffman, West Hartford, CT, for Plaintiff.

Jennifer L. Schancupp, Esq., Susman, Duffy & Segaloff, P.C., New Haven, CT, for Defendant.

## MEMORANDUM OF DECISION ON COMPLAINT FOR AVOIDANCE OF LEASE AND OTHER RELIEF

ALBERT S. DABROWSKI, Bankruptcy Judge.

## I. INTRODUCTION

Through this adversary proceeding the Plaintiff seeks monetary and declaratory relief in connection with a long-term lease under which it is the lessor. The Plaintiff pursues declaratory relief in order to shed the prospective burden of the subject lease, and prays for money damages for the alleged unjust enrichment of the Defendant-lessee over the preceding term of the lease.

The Plaintiff attacks the future effectiveness of the subject lease on three separate legal bases: (i) "avoidance" under the terms of Bankruptcy Code § 544(a); (ii) "avoidance" for unconscionability under Connecticut General Statutes § 47–210; and (iii) "rejection" pursuant to Bankruptcy Code Section 365. At trial this Court received the testimonial evidence of several expert and lay witnesses, as well as scores of documentary exhibits. Upon consideration of the record as a whole, and the law applicable to this adversary proceeding, the Court has determined that it is unnecessary to address the merits of any of the Plaintiff's claims other than those set out in Counts I and IV of the Complaint, i.e. the bankruptcy avoidance and unjust enrichment claims.

## II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). Resolution of Count I of the Plaintiff's Complaint is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(A), (K), (O). Resolution of Count IV of the Plaintiff's Complaint is either a core proceeding or is determined by the implied and inferred consent of the parties.[1]

1. By alleging in its Complaint that this entire adversary proceeding constitutes a "core pro-ceeding", the Plaintiff has consented to a determination by this Court of Count IV. The

## III. FACTUAL BACKGROUND

The Plaintiff, University Towers Owners Corporation (hereafter, "UTOC"), is a Connecticut corporation which owns and operates a 16–story mixed-use building (hereafter, "Building") located at 100 York Street, New Haven, Connecticut. The Building contains approximately 236 apartment units (hereafter, "Apartments") and approximately 24,400 square feet of professional office space (hereafter, the "Professional Space").

From the time of its construction in the late 1950s until January 31, 1981, the Building was owned by the Defendant, UTB Associates (hereafter, "UTB"), a Connecticut limited partnership which leased the underlying land from the City of New Haven pursuant to a 99–year ground lease dated November 26, 1958. On January 31, 1981, the Building and other improvements (hereafter, collectively, the "Improvements") were sold to Ivy University Towers Associates (hereafter, "Ivy Associates")—an entity which intended to convert the Improvements to cooperative ownership. Until that time UTB had been operating the Improvements as rental property—leasing the Apartments to individuals for residential use, and the Professional Space to various medical professionals (hereafter, "Tenants") for commercial purposes.

On February 1, 1981, UTB executed a long-term lease (hereafter, "Master Lease"), whereby it leased back the Professional Space, as lessee, from Ivy Associates. Neither the Master Lease itself, nor a Notice of Lease respecting the Master Lease, was recorded on the New Haven Land Records.

By Assignment of Lease dated August 3, 1981, and in connection with the conversion of the Improvements to cooperative ownership, Ivy Associates assigned its interest in the Master Lease to UTOC. Consequently, UTOC became, and remains, the lessor under the Master Lease.[2]

By Lease Subordination Agreement dated January 2, 1990, by and among UTOC, UTB and Du Pont Mortgage Corporation (hereafter, "Du Pont"), the Master Lease was subordinated to a mortgage deed from UTOC to Du Pont (hereafter, the "1990 Subordination"). The 1990 Subordination was recorded on the New Haven Land Records on January 16, 1990.

By Agreement dated June 12, 1996, UTOC and UTB resolved certain disputes between them respecting, *inter alia*, the Master Lease (hereafter, the "1996 Agreement"). The 1996 Agreement contains the following provision: "UTOC and UTB hereby confirm the validity and enforceability of the [Master] Lease... and the [Master] Lease... shall remain in full force and effect except as specifically provided for herein.... Both parties acknowledge and agree that there are no other open issues which have not been identified or addressed within this Agreement;... that this Agreement constitutes the entire agreement between the parties, whether oral or written, implied or expressed." The 1996 Agreement was recorded on the New Haven Land Records on July 3, 1996.

UTOC, UTB and J.P. Morgan Investment Management Inc. executed a "Non–Disturbance, Subordination and Attornment Agreement" dated November 21, 1997, respecting the Master Lease (hereaf-

---

Defendant's consent to this Court's determination of Count IV is inferred from the fact that judgment is granted on that Count in favor of the Defendant.

2.  On November 9, 1988, pursuant to a Quit Claim Deed from the City of New Haven, UTOC also acquired title to the underlying land upon which the Improvements are located.

ter, the "1997 Agreement"). The 1997 Agreement was recorded on the New Haven Land Records on November 25, 1997.

The 1990 Subordination, the 1996 Agreement, and the 1997 Agreement are hereafter referred to collectively as the "Recorded Documents". Read collectively, the Recorded Documents supply most, but not all, of the information required by C.G.S. 47–19 to be included in a Notice of Lease.

On June 9, 1999 (hereafter, the "Petition Date"), UTOC became a bankruptcy debtor by virtue of its filing of a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. No trustee has been appointed in UTOC's Chapter 11 case; hence it is serving as, and enjoys rights and powers of, a debtor-in-possession under the Bankruptcy Code.

## IV. DISCUSSION

### A. "Avoidance" of the Master Lease under Section 544(a).

■ UTOC seeks to avoid the Master Lease under the authority of Bankruptcy Code Section 544. Subsection (a) thereof gives a "trustee" the rights and powers of

certain hypothetical entities as of the petition date, and "without regard to any knowledge" of such trustee or of any creditor.[3] UTOC, as a debtor-in-possession, is endowed with all the rights of a "trustee" under Bankruptcy Code Section 544(a), *inter alia.* 11 U.S.C. § 1107(a) (1999).[4] Among the hypothetical entities whose rights and powers are available to a trustee or debtor-in-possession are bona fide purchasers and lien creditors. 11 U.S.C. §§ 544(a)(1), (3) (1999). Therefore, the Court's task in this proceeding is to determine what rights a bona fide purchaser and/or lien creditor "without... knowledge" possesses vis-a-vis the Master Lease. That question must be informed by applicable state law, *i.e.* Connecticut law. *See Vienna Park Properties v. United Postal Savings Ass'n. (In re Vienna Park Properties),* 976 F.2d 106, 115 (2d Cir.1992).

■ Under Connecticut law, a subsequent interest holder in real property is not bound by a prior leasehold interest unless he had actual knowledge or constructive notice of the leasehold interest. Thus, unless Section 544(a) allows knowledge or notice of the Master Lease by a

---

3. Section 544(a) provides in relevant part as follows:

    The trustee shall have, as of the commencement of the case, and *without regard to any knowledge* of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

    (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

    \* \* \* \* \* \*

    (3) a bona fide purchaser of real property, other than fixtures, from the debtor,

against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a) (1999) (emphasis supplied).

4. There are no circumstances in this case which would undermine or limit UTOC's standing as a "trustee" under Section 544(a).

bona fide purchaser or lien creditor, UTOC may "avoid" it.

### 1. Actual Knowledge.

■ Under Connecticut common law, a purchaser with *actual* knowledge of a prior lease cannot be a *bona fide* purchaser vis-a-vis the subject leasehold, and will take the property subject to that leasehold interest. *See, e.g., Andretta v. Fox New England Theatres, Inc.*, 113 Conn. 476, 480, 155 A. 848 (1931).[5] Plainly UTOC had actual knowledge of the Master Lease on the Petition Date since it was, and remains, the lessor thereunder. Nonetheless, Section 544(a)'s "without regard to any knowledge" clause insulates UTOC, as debtor-in-possession, from such knowledge.

■ Connecticut courts have also developed related legal principles which, although often referred to as "constructive notice", in reality constitute an *actual* knowledge doctrine. Under these principles a purchaser is deemed to have actual notice of a prior leasehold interest "if he *knows* 'facts which are sufficient to put a prudent man upon inquiry, which, if prosecuted with reasonable diligence, would certainly lead to discovery of a conflicting claim.'" *Id.* (emphasis supplied) (hereafter, the "Inquiry Doctrine").

■ UTB points to several facts—the Recorded Documents, the Tenants' open possession, etc. (hereafter, the "Suggestive Facts")—which could arguably place a prudent person upon inquiry which, if pursued with reasonable diligence, would certainly lead that person to discovery of the Master Lease. That observation may well be correct. However, this Court need not consider that question, since knowledge of the Suggestive Facts cannot be imputed to UTOC as a bona fide purchaser or lien creditor. Section 544(a)'s "without knowledge" clause precludes the *actual subjective* knowledge of a debtor-in-possession, or creditors, from undermining the debtor-in-possession's rights and powers as a hypothetical bona fide purchaser or lien creditor. While Connecticut's Inquiry Doctrine establishes an *objective* standard of inquiry and diligence, that standard is only triggered by a *subjective* receipt of real information, *i.e.* by *actual knowledge* of facts such as the Suggestive Facts in this proceeding. Since Section 544(a) shields UTOC from knowledge of the Suggestive Facts, UTOC is not in receipt of information which would compel it to further inquiry regarding the Master Lease.[6]

### 2. Constructive Notice.

■ Purchasers and lien creditors also take their interests in real property subject to pre-existing leasehold interests where the law deems them to have *constructive notice* of such tenancies. With respect to leases, constructive notice is

---

5. This authority was developed in the context of an assessment of the rights of a "purchaser" of real property. By contrast, an argument can be made that the rights of a *lien creditor* are unaffected even by actual nonce. *See Maloney v. American National Bank (In re Terkeltaub),* 117 B.R. 47, 50 n. 3 (Bankr. D.Conn.1990) (*citing Ives v. Stone,* 51 Conn. 446, 458 (1883)); *In re Minton Group,* 27 B.R. 385, 391 (Bankr.S.D.N.Y.1983); *aff'd.* 46 B.R. 222 (S.D.N.Y.1985).

6. The Inquiry Doctrine was developed in the context of an assessment of the rights of a "purchaser" of real property. A forceful argument can be made that the rights of a *lien creditor* are unaffected by its receipt of information which would set a reasonable person to further inquiry. *See Terkeltaub, supra,* at 50 n. 3; *Minton Group, supra,* at 391. However, it is unnecessary to determine this issue at this time since this Court has ruled that under Code Section 544(a) *both* purchasers and creditors are insulated from knowledge which would trigger a duty of inquiry.

provided by the recordation of lease documents in compliance with Connecticut General Statutes § 47–19. That Section provides in pertinent part that—

"[n]o lease of any building... for any term exceeding one year... shall be effectual against *any persons other than the lessor and lessee*... unless it is in writing, executed, attested, acknowledged and recorded in the same manner as a deed of land,[7] provided a *notice of lease* in writing, executed, attested, acknowledged and recorded in the same manner as a deed of land, and containing [7 formalities]... shall be sufficient."

C.G.S. § 47–19 (1999) (emphasis supplied). Documents meeting the formalities of Section 47–19 stand as notice to all persons of the subject lease; and bona fide purchasers and lien creditors, *inter alia*, are *deemed* to know of them, *regardless of actual knowledge*. The Master Lease does not comply with Section 47–19 for the reason, *inter alia*, that neither the Master Lease, nor a Notice of Lease concerning it, was recorded on the New Haven Land Records prior to the Petition Date.[8] Hence, by virtue of the plain language of Section 47–19, the Master Lease is not effectual against UTOC in its hypothetical status as lien creditor or bona fide purchaser.

This Court also concludes that UTOC, as a purchaser or lien creditor, should not be deemed to have constructive notice of the *Recorded Documents* by virtue of their recording on the New Haven Land Records.[9] In essence, UTB urges the Court to determine that the recordation of the Recorded Documents provides constructive notice of the Recorded Documents, which is sufficient to trigger a duty of inquiry under the Inquiry Doctrine. However, to indulge this reasoning would ignore the plain language of Section 47–19, and completely undermine its effectiveness. Under UTB's argument, the incidental recording at any point in a chain of title of any document containing a mere reference to the unrecorded lease in question could render a bona fide purchaser or lien creditor subject to that unrecorded lease, even in the *absence of actual knowledge* of either the lease or the incidental document. Such a common-law rule would render the statutory standard a nullity, intruding upon the legislative prerogative and standing fundamental jurisprudence on its head. Legislative mandates can eclipse common-law rules, not visa versa.

## B. Unjust Enrichment.

The Plaintiff's claim that the Defendant was unjustly enriched is barred by waiver, equitable estoppel and laches for the reasons stated in Sections II.C., D., and E. of the Defendant's Proposed Findings of Fact and Conclusions of Law, Doc. I.D. No. 100.

## V. CONCLUSION

For the foregoing reasons judgment shall enter in this adversary proceeding (i) in favor of the Plaintiff on Count I of the Complaint, declaring the Master Lease not effectual against the Debtor-in-possession;

---

7. A deed of land must be "recorded on the records of the town in which the land lies" to be effectual against any person other than the grantor and his heirs. C.G.S. § 47–10 (1999).

8. This Court will not deem the combination of the Recorded Documents and the relevant Validating Act. Special Act 99–7, §§ 3(19), (21), to constitute a Notice of Lease for purposes of C.G.S. § 47–19. By its terms the Validating Act only cures and validates a formal Notice of Lease, not a group of disparate documents which *might*, when considered together, be construed as supplying some informal notice of a lease.

9. Even if the Court were to conclude otherwise, it would likely not extend that ruling to lien creditors. *See* footnote 6, *supra*.

(ii) in favor of the Defendant on Count IV's claim for unjust enrichment; and (iii) dismissing Counts II and III as moot in light of the judgment on Count I.[10]

This Memorandum of Decision shall constitute this Court's Findings of Fact and Conclusions of Law pursuant to Fed. R. Bank. P. 7052.

**10.** This Court previously dismissed Count V on the Defendant's motion.